SAMUEL B. LOVE, SHERIFF, APPELLANT, V. WILLIAM WILLIAMS, APPELLEE.

The lien of an execution does not constitute, *per se*, a right of property in the thing itself, but a right to levy upon and sell it, for the satisfaction of the debt. But any sale or assignment of the defendant's personal property after the delivery of the writ of *fieri facias* to the sheriff is ineffectual as to the lien of the writ.

Where two writs of execution are delivered to the sheriff, and he executes the one last delivered first, the property of the goods is bound by the sale, and the money must be paid over to the plaintiff in the writ under which the sale was made. The plaintiff in the writ last delivered has his remedy only against the sheriff, for the breach of duty in not executing first that writ which was first delivered to him.

Where the sheriff has been guilty of a breach of duty in not levying the execution which was first delivered, the courts cannot give relief summarily, by motion or rule. The proper remedy is an action on the case for a false return, or for not levying the writ.

The record in this case shows the following state of facts and proceedings in the Court below, viz:

William Williams, on the 14th November, 1842, obtained judgment against James Lanier, Robert L. Harrison and

Uz Wood, for $1,328 10, in the late Superior Court in Gadsden County.   A *fieri facias* issued thereon, and on the 11th May, 1844, an *alias* writ of *fieri facias* was sued out, returnable when satisfied, which was delivered the same day to John G. Camp, Marshal of the Middle District, and was in his hands, unexecuted, when the State government was organized, and on the 1st November, 1845, was turned over by him to Benjamin C. West, who had been elected sheriff of the County.

· A few days prior and up to the 12th November, 1849, (the appellant, Samuel B. Love, having been elected sheriff,) the late sheriff was engaged in delivering the precepts and papers in his office to his successor, the appellant, which was thus effected:—Robert C. Lester, the Clerk of the Court, was employed by the late and newly elected sheriffs to prepare a list or schedule of the executions, and which the new sheriff, Love, receipted to his predecessor for   Lester does not recollect whether the above mentioned *fieri facias* was among the papers so turned over ; but James Hine, who was deputy for the former sheriff, says he saw the *fieri facias* among the papers so turned over to Love.

On the 12th November, 1849, the Court-House at Quincy was destroyed by fire and, with it, all the records and papers of the clerk's and sheriff's offices, except the files of the causes for trial at the approaching term.

On the 14th November, 1849, Richard H. Wilson, Executor of James Wilson, recovered judgment in the Circuit Court of the Middle Circuit for Gadsden County against Robert L. Harrison, for $2,057 29, on which he sued out a *fieri facias* on the 27th November, 1849, and which was delivered to the appellant, Love, the Sheriff of the County, on the same day, and by him levied on the 29th of the same month upon three slaves and 400 bushels of Corn, the property of the defendant in execution.   The property was sold on the 7th January, 1850, for the sum of $1,050 ; of which.

sum, thirty-four dollars and two cents were levied for his costs and commissions, leaving a balance of one thousand and fifteen dollars and ninety-eight cents nett proceeds of said sale.

On the 7th January, 1850, the plaintiff in the first *fieri facias* served the sheriff with a notice, in the following terms:

William Williams, plaintiff, v. James Lanier, R. L. Harrison and Uz Wood, defendants.—Assumpsit.

In November term, A. D., 1842. Judgment for, to wit, $1,400, in late Superior Court for the County of Gadsden, State of Florida. Last *alias* writ of *fieri facias* came to the hands of the proper officer, 11th day of May, A. D., 1844. The above described writ of *fieri facias* is in your hands, and there is still due and owing upon the same to the said William Williams the sum of, to wit, $1,600.

You are hereby notified that the said William Williams will hold you accountable for any property or money that is now, or may hereafter, come to your possession, belonging to said James Lanier, Robert L. Harrison and Uz Wood, or either of them, until said writs of *fieri facias* are fully and completely satisfied.          WILLIAM WILLIAMS,

> *by his Attorney, John Erskine.*

To Samuel B. Love, Esq.,

> *Sheriff of Gadsden County, State of Florida.*

Endorsements thereon, viz : I accept due, and sufficient, and timely service of the within notice.

> S. B. LOVE, *Sheriff.*

Quincy, *January* 7, 1850.

And on the 10th January, 1850, the said Williams filed his petition to the Circuit Court, praying the establishment of the record of the judgment and of the writ of *fieri facias,* which had been destroyed by the fire of the 12th November, and such proceedings were had, that, on the 20th day of May, 1850, the Court ordered that the judgment be

revived and substantiated, with the same force and effect as if it had not been destroyed ; and on the 22d day of May, 1850, ordered and directed that a substantial copy of the writ of *fieri facias,* which issued on the 11th May, 1844, should be prepared by the clerk and issued, and that, when issued, should be substituted in the place of the original, which was destroyed.

On the 21st May, 1850, Williams, the plaintiff in the *fieri facias* against Lanier, Harrison and Wood, moved for and obtained a rule upon the appellant, to show cause why he does not pay over to the plaintiff $1,050 in his hands, collected from the defendants in said suit.

To which rule, the appellant answered as follows, viz : " In answer to the rule entered in this case, on the motion of John Erskine, Esq., attorney for the plaintiff, the sheriff says that he does not know whether any execution ever came to his hands in the above stated case ; but if the execution in this case did come to his hands, it was destroyed in the fire, which consumed the sheriff's office on the 12th day of November, A. D., 1849.   That, afterwards, on the 27th day of November, 1849, an execution came to his hands in favor of Richard H. Wilson, executor of James Wilson, against Robert L. Harrison, for the sum of $2,057 29-100, which he levied on the following property : Judy, about 24 years of age, and her 3 children—Sarah, about 6 years — Kinch, 4 years, and John, about 2 years ; which property was sold, under and by virtue of said execution, for the sum of $1,050, which, after deducting $34 02-100, left a balance of $1,015 98-100—of which sum, he paid over to R. E. Gibson, attorney of Richard H. Wilson, executor as aforesaid, $1,-000, leaving in his hands $15 98-100, subject to the order of this Court.                    S. B. LOVE, *Sheriff.*"

Exhibiting with his return a copy of the *fieri facias* of Wilson's executor v. R. L. Harrison, with the levy and sale endorsed thereon.

17

On Thursday, November 21, 1850, the Circuit Court made the rule absolute, directing the sheriff to pay over to the respondent's attorney the amount collected by the said sheriff on the *fieri facias* in favor of R. H. Wilson, executor, v. R. L. Harrison, and to be applied, it is presumed, to the satisfaction of the *fieri facias* in favor of respondent, against Harrison *et al.*

From this judgment, the sheriff brought this appeal to this Court.

*Gibson,* for Appellant.

This is a rule on the sheriff to show cause why he has not paid over money. The rule is designed to be in accordance with the statute to be found in Thompson's Digest, page 358. Tidd's Practice, pages 58–9.

This remedy was only given by the statute, in cases where money has been actually collected on an execution. The rule should have alleged that the money mentioned in the rule had been collected on the execution of Williams v. Harrison *et al.*

The English practice is to rule the sheriff to return the writ, and if the party is not satisfied with the return, to sue the sheriff for a false return. Clerk v. Withers, 1 Salkeld, 322, 323. Tidd's Practice, p. 309. Thompson's Digest, page 355.

The Court below confounded the practice under the statute and the English practice, by ruling the sheriff to return the writ, and then declared the return false, and entered up judgment.

The sheriff had a mandate from Gadsden Circuit Court to execute, to wit, the execution of Wilson v. Harrison, and this he must do, until a superior mandate supervenes.

The notice was incomplete, in not stating that the execution was lost, but if complete, was not sufficient to stop the execution of the *fieri facias.* Thompson's Digest, page 360.

The only remedy the appellee had, if any, was to have filed a bill, making the sheriff, Wilson, and the defendants in his execution parties, and to have obtained a writ of injunction, which would have come with authority.

Supposing this proceeding to be proper, yet the execution which appears on the record is irregular, and not authorized by either of the orders which appear on the record.

The first order simply says that the judgment shall be established, and that the plaintiff may have execution thereof.

The second order, which authorizes the establishment of the original execution, (for which the one on the record seems to be designed,) though entered at the May term, was suspended until the Fall term ; yet this execution was issued in May.

This case simplified, resolves itself into this, that the sheriff had an execution in his hands, which was destroyed by fire ; in the mean time, another execution comes to his hands, which he executes. When ruled on the first execution, he returns that he never had it, but it is proved that it was in his hands, and that it was burned in the fire which consumed the Court House, which is a sufficient excuse. 1 Hill's South Carolina Reports, 69, Mitchell v. Anderson.

The execution of Williams was dormant—it had slept for years, and there was a manifest want of diligence, in not procuring it to be satisfied, before the judgment in favor of Wilson was obtained. On the subject of dormant executions, see 17th Johnson, 274. 11th Johnson, 107. 1 Bayley, 295.

*Erskine,* for Appellee, said—

1. If the sheriff had paid over to Wilson's attorney the money received from the sale of Harrison's property, under the execution in favor of Wilson, before the notice, there might be a question ; but as notice was given, he should have paid it over to William Williams, the plaintiff in the

elder *fieri facias.*     Sanders v. Bridges, 3d Barnewall & Alderson, 95.

2. The first execution must have the priority, though the levy and sale were under the younger. Hutchinson v. Johnson, 1st Term Reports, 729. Citing, also, Willis v. Shepard, 2d Florida Reports, 397.

3. The property of a defendant in execution is not divested by the levy—not till sale, or execution executed.

*Archer,* in reply, referred

To the rule served in this case, contending that there was a want of particularity and certainty in it—that the proceedings to establish the destroyed record and writ of execution were not evidence against the sheriff in this controversy. The plaintiff, Williams, it is true, had a lien from the time the execution came to the hands of Camp, the marshal ; but the question here is, ought not the sheriff to be excused, under the special facts of the case ?

There is a difference between the existence of a lien, and a complaint against an officer for not enforcing the lien. The question is, what was the proper course to pursue, admitting the existence of the lien ? Manifestly the remedy was not by summary proceeding by motion. The proper course was, first to procure a return, and if that return was false, then the remedy was by action on the case.

THOMPSON, *Justice,* delivered the opinion of the Court.

At the Spring term, 1850, of the Circuit Court, sitting in Gadsden County, Williams, who was plaintiff in a judgment and execution against Robert L. Harrison and others, obtained a rule against the appellant, to " show cause why he should not pay over to the plaintiff one thousand and fifty dollars collected from the defendants."

The appellant in his answer to the rule says: He does not know whether any execution ever came to his hands in

the said case, but if it did come to his hands, it was destroyed by the fire which consumed the sheriff's office on the 12th November, 1849. That the sum named in the rule was made by a seizure and sale of Harrison's property on a *fieri facias* in favor of Richard H. Wilson, executor, against said Harrison, which was delivered to him on the 27th November, 1849, and that he had paid to the attorney of said Wilson $1,000, and after deducting his costs and expense in making said sale, he had in his hands the sum of $15 98.

Upon this answer, evidence was introduced, showing that the execution of Williams against Harrison and others, which was of the date of the 11th May, 1844, had been delivered to the Marshal of the Middle District on the said May 11th, 1844, and had been transferred and delivered to B. C. West, late sheriff of the County of Gadsden, on the 1st of November, 1845, and was by the said West turned over to the appellant, together with a number of other writs, a day or two prior to the fire.

Williams places his claim to this sum of money on the ground that his execution was first delivered to the sheriff and had priority, and that the money should have been paid to him, notwithstanding it was made by a seizure and sale of Harrison's goods by virtue of the junior writ of *fieri facias* in favor of Wilson's executor.

Two questions are presented for the decision of the Court upon the argument here:—First, as to the character and extent of the lien of an execution upon the goods of the debtor; and, secondly, whether the respondent, if he has sustained an injury, did in the Court below pursue the proper remedy in the assertion of his claim?

1. As to the lien of the execution. At common law, the *fieri facias* had relation to its *teste*, and bound the defendant's goods from that time, which was always some day in the term at which the judgment was entered; but this *rela-*

*tion* proving inconvenient and mischievous in practice, the goods continuing liable in the hands of those who had purchased *bona fide* and for a valuable consideration from the defendant, between the *teste* of the writ and the day of its actual issue, the statute 29th Car. II, c. 3, § 16, was intended to correct the mischief. This statute, which is of force here in this particular, enacts that "no writ of *fieri facias,* or other writ of execution, shall bind the property of the goods of the party against whom such writ of execution is sued forth, but from the time such writ shall be delivered to the sheriff," &c. See Tidd's Practice, 1,000.

"Neither before the statute nor since," says Mr. Tidd, is the property in the goods *altered* by the delivery of the writ to the sheriff; but it continues in the defendant till execution executed." And this, no doubt, upon the principle that a lien does not constitute, *per se,* a right of property in the thing itself, but a right to levy upon and sell it for satisfaction of the debt. In Lowthal v. Tompkins, 2 Equity Cases Abridged, 380, Lord Hardwicke explains what is meant by goods being *bound* from the delivery of the execution : that if defendant makes an assignment of his goods, unless in market *overt,* the sheriff may take them in execution, and this view is sustained in all the cases. We have no markets *overt* in this country, and therefore any sale or assignment of the defendant's personal property, after the delivery of the *fieri facias* to the sheriff, is ineffectual as to the lien of the writ. But the contest here is not between the purchaser of goods from the defendant and the plaintiff in the *fieri facias,* but it is between the plaintiff in one execution and the sheriff, in which the former claims that the money which the latter made on another writ shall be paid to him, because, as alleged, he holds the elder writ and his lien is prior in point of time. Is this position correct? Do the liens of different executions attach in the order of priority of the time of their respective delivery to the sheriff upon

the property of the defendant in execution, or upon the proceeds of the sale of it in the sheriff's hands, so as to authorize a rule upon the sheriff to pay the money over as the money of the plaintiff in the first writ delivered?

It is true that all the authorities lay down the proposition that, as between different plaintiffs, if two writs of execution are delivered to the sheriff on the same or different days, he ought to execute that first which was first delivered, unless it be fraudulent or dormant; but if he executes, that is, levies and sells, by virtue of the writ last delivered, the property of the goods is bound by the sale, and the party cannot seize them by virtue of the writ first delivered. Tidd's Practice, 1000, and authorities cited in the margin. Bradley v. Wyndham, 1 Wilson's Reports, 44. Hunt v. Hooper, 12 Meeson & Welsby, 664. Thus, in Smallcombe v. Cross and the sheriff of London, 1 Lord Raymond, 252, the sheriff levied on the defendant's goods under the writ last delivered and sold them to Smallcombe. By the direction of the plaintiff in the elder writ he again levied on the same goods under that writ and sold them to Cross. The first purchaser, though under the junior writ, brought *trover* for the goods and recovered. The Court, *per* Holt, Chief Justice, resolved that the sheriff has not an election to execute that writ which he pleases, but should proceed upon the writ first delivered; yet that if he do otherwise and execute the writ last delivered first, the property of the goods is bound by the sale, and the party cannot seize them by virtue of his execution first delivered, but may have his remedy against the sheriff. The reason given is, "that sales made by the sheriff ought not to be defeated; for if they are, no man will buy goods levied upon a writ of execution." And in the subsequent case of Payne v. Drewe, 4 East's Reports, 523, 545, the case of Smallcombe v. Cross and other precedent cases were commented upon and approved; and Lord Ellenborough, in delivering the judgment of the Court, lays

down the rule thus : " that where there are several author-
" ities equally competent to bind the goods of a party when
" executed by the proper officer, that they shall be consid-
" ered as effectually and for all purposes bound by the au-
" thority which first actually attaches upon them in point
" of execution, and under which an execution shall have
" been first executed."

Upon the authority of these cases it is clear that the lien
of Williams' execution did not attach upon the property, so
as to defeat the sale by the sheriff under the junior writ of
Wilson's executor, for both authorities were equally compe-
tent to bind the personal property of the defendant, Harri-
son, and the latter having first attached in point of execu-
tion, the property is to be considered bound by it to the ex-
clusion of all others.   In Rankin v. Scott, 6 Peter's Con-
densed Reports, 506, a distinction is well taken between the
lien of a judgment on land and the lien of an execution upon
personalty.   In the first case the lien is by matter of record ;
in the other it is not, not even by the writ, except from the
time of delivery to the sheriff.   The purchaser of perso-
nalty cannot suppose that the officer has committed any
impropriety in the performance of his duty, and even if he
desired to examine into the propriety of his action, he has
not the means of doing so ; while, on the other hand, if
land is offered for sale by the sheriff, the lien being by judg-
ment, it is a matter of record, and the purchaser can, by
examination of the records, satisfy himself whether there
are any other and superior or prior liens upon the property.
This case of Rankin v. Scott is cited approvingly by this
Court, in the case of Moseley v. Doe ex dem. Edwards, 2d
Florida Reports, 438, 439.

Has the plaintiff in the writ first delivered, any lien on
the money in the hands of the sheriff, made by the seizure
and sale under the second writ ?   The case of Payne v.
Drewe, before cited, as well as the cases of Rybot v. Peck-

ham, 1 Term Reports, 731, n., and of Rowe v. Tapp, 9 Price R., 317, are conclusive that he has not. The last case is directly upon the point. Two writs of *fieri facias* had been delivered to the sheriff at different times, at the suit of different plaintiffs, against the same defendants; being ruled to return the second writ, he returned that he had levied on certain goods and chattels of the defendant, which remained in his hands for want of buyers; the plaintiff then sued out a *venditioni exponas*, to which the sheriff returned that he had sold the goods, and retained the proceeds of sale, to apply to the other writ of *fieri facias*, which had been first delivered him. The Court, on motion, quashed the return, and made the order absolute upon the sheriff to pay over the money to the plaintiff in the second *fieri facias*.— The case of Saunders v. Bridges, 3d Barnewall & Alderson, 95, cited by the counsel for the respondent here, is not opposed to the case last cited. In Saunders v. Bridges, which was an action for a false return, the sheriff had levied the elder writ and made the money; subsequently the defendant obtained an order setting aside this writ, and directing the money to be returned to him; the sheriff paid over the money to the defendant, and returned *nulla bona* to the junior writ—the Court held he should have retained it to satisfy the second writ; that as he did not ask the Court for directions, nor give notice to the plaintiff in the second writ of the service of the rule upon him, he had paid the money in his own wrong, and made himself liable.

It would seem, from Hutchinson v. Johnson, 1st Term Reports, 729, that, if the sheriff having two writs in his hands, should levy under the second, he may afterwards sell under the first, and thus escape liability; but it is equally clear from all the authorities, that, if he levies and sells by virtue of the writ last delivered, he must pay the money over to the plaintiff in that writ; and the plaintiff in the writ first delivered has his remedy only against the

sheriff, for the breach of duty in not executing first that writ which was first delivered to him.

2. As to the remedy pursued by the respondent in the Court below. The rule *nisi* obtained on the 21st May, 1850, from its structure, is based on the act of February 17th, section 7, (Thompson's Digest, 358,) which gives a summary remedy by rule against the sheriff to pay over, with twenty per cent. damages, money which he has collected upon an execution, and has retained for the space of thirty days after its receipt ; and the argument of respondent's counsel in this Court is upon the superior right of the plaintiff in the elder writ, by virtue of his supposed prior lien upon the property levied on, or its proceeds when sold, to consider the money thus made by the sheriff as applicable to his execution. As we have seen, he has no such right ; but if the sheriff has been guilty of a breach of duty in not levying his writ first, his remedy is against the sheriff ; and can the Courts proceed summarily by motion, or rule, to administer to his relief? We are not aware of any such authority, either by the common law, or by statute of this State, and none has been cited in the argument. The case of Willis ex v. Shepard, 2d Florida Reports, 397, has been cited by the counsel for respondent; but although this Court does there suggest a form of proceeding by rule in cases of this sort, yet the authority, we think, is against the present case. The Court suggests that where there are adverse claimants to money in the sheriff's hands, " the proper course is for each claimant to take a rule against the sheriff ; the allowance of one will be the refusal of the other ; by an order of consolidation, all can be tried together, and in case of appeal by any, the stay of the others may be had, as directed, until final decision." Yet in that case, the rule which was entered, being by one execution creditor against the sheriff and the other execution creditors jointly, presented the same state of case as several rules by each of the exe-

cution creditors against the sheriff would do, after an order of consolidation had passed. The parties all appeared before the Court, and litigated with each other their respective claims, and the Court having decided upon the questions made, and ordered distribution of the funds, the dissatisfied party appealed to this Court. The judgment was reversed, the Court saying that there was " no such proceeding at common law, or by statute, as a rule between two individuals to try the right of money in the hands of a third person, the sheriff," and we think the judgment was right. In like manner, we are compelled to say that we are not aware of any such proceeding at common law, or by the statute of this State, which authorizes a summary proceeding by motion or rule against the sheriff for a false return, or for not levying an execution in his hands to be executed. A statute was passed in 1833, authorizing the plaintiff in execution, upon a return of *nulla bona,* to controvert the same, and make up an issue thereon, to be submitted to a jury in a summary manner, and authorizing a judgment to be entered on the verdict of the jury, (Duval's Digest, 9, § 8 ;) but this section of the act was repealed by the act of February 15, 1834, (Duval's Digest, 13, § 5.) The suggestion in Willis executor v. Shepard, as to the remedy by rules, probably was not well considered, as the attention of the Court was not drawn to the subject, as a point necessary to the decision of the cause.

We are satisfied that the proper remedy, if the plaintiff in the elder *fieri facias* has been in fact injured by any malfeasance or nonfeasance of the sheriff, is that which was presented and urged in argument by the counsel for appellant. The plaintiff has a right to call upon the sheriff for a legal return upon the process at every term of the Court, by section 8 of the act of March 15, 1844, (Thompson's Digest, 355.) If the return is false, as where the sheriff returns *nulla bona,* when he might have made the money, or

has given undue preference to a writ subsequently deliver-
ed, the plaintiff must resort to his action on the case, for a
false return, or for not levying the writ.   Tidd's Practice,
1022.   In such an action, the facts upon which the liability
of the sheriff is claimed to be founded, as well as his de-
fence, will, under the guidance and instruction of the Court,
be passed upon by a jury.   This is his right, and he cannot
be deprived of it, without his express consent.

The conclusion at which we have arrived, renders it un-
necessary that we should consider the other points made
and discussed in the argument at the bar.

The judgment of the Court below is reversed with costs.

SEMMES, *Justice*, dissented :

I regret I am compelled, in this case, to differ in opinion
from the Court ; but a sense of duty requires me to dissent
from some of its views.   The execution in favor of Williams,
while in possession of the sheriff, it is true, was destroyed
by fire ; but this does not affect the question.   The execution
was still in full force, and its lien and priority were unim-
paired.   The lien acquired by this execution on the *proper-
ty* of the defendant in *fieri facias* was, I admit, defeated by
the sale ; but its *priority* over the junior writ was still sub-
sisting and unaffected as to their respective rights.   The
fact that the sale was made under the junior execution did
not defeat or affect this priority over the proceeds of the
sale, which stood in lieu of the property.   *No act of the
sheriff could defeat it.*   It was the duty of that officer to look
to the outstanding executions, to determine to whom the
money belonged ; and the time each execution came to his
hands determines their respective priorities.

Had the sheriff retained in his hands, as it was his duty
to have done, the proceeds of this sale, to be applied to the
senior execution, it would, in my opinion, have been a suf-
ficient answer to any rule or action against him by the

junior execution creditor—money must be paid on executions according to their priorities.    2 Watt's Reports, 303.

The sale in this instance was *valid* and, consequently, the lien of Williams' execution was gone, *because* the *law* here interposes and protects the rights of an *innocent* purchaser. See 10 Watts' Reports, 212.    And this is the only reason which can be assigned why the *sale* under a junior execution is *valid*.    One of the great objects designed to be effected by the statute 29th Charles II, was to secure the possession of purchasers under execution.    1 Term Reports, 729.

The *levy* of the junior writ did not in any respect affect the priority of the senior, and the *only effect* of the sale was to divest the defendant in execution of the title, and vest it in the purchaser.    If the elder execution creditor attempted to assert his previous lien on the property, it then became a question with him and the purchaser, and the law favors the latter—not by reason, however, of the junior writ having acquired any *priority* by virtue of the *levy* and *sale;* but, when the creditor claims the proceeds of sale, the question is then between him and the sheriff; or, if the junior creditor interposes, still the priority of the claim determines the then respective rights.    Numerous authorities in England and in this country could be referred to which show that where several executions are levied on the same property, and it is sold under all, the proceeds of sale are always applied to the senior writ.    If the doctrine be true, as is asserted, that the *levy* and *sale* of property under a junior execution, entitles it to the proceeds, then the principle in all these authorities is false, and the executions should be satisfied *pro rata* out of the fund raised by their joint levy and sale.    But the principle in these cases is true, and is a necessary consequence from the statute giving priorities to executions—that no matter under what writ the sale is made, the proceeds of right belong to the senior execution.    I do not understand the authorities referred to in 1 Term Re-

ports, 729 and 4 East, 523, 545, as asserting any other principle than that the sale is valid, though under the junior writ ; a doctrine which no one questions.

But the American authorities, so far as I have had time to examine them, decide on principle " that it is wholly immaterial upon whose execution the sale was made ; the execution first in the hands of the officer is entitled to the proceeds of the sale." 6 New Hampshire Reports, 73 and the numerous authorities referred to. 3 Watts & Sergeant, 438. 2 Hawks' Reports, 309. Also, 5 Cowen's Reports, 396. In the last authority, it is true, the *levy* was under the first execution, but this did not give it any greater preference than the law had previously given it, and the Court decided that the proceeds of sale of right belonged to the senior writ, *though made under the junior*.

If, then, it be true that the execution which first comes into the hands of the sheriff has a priority to the proceeds of sale, why compel the execution creditor to resort to his action against the sheriff to recover that which is in the hands of the latter, and which he has no right to control ? The principle is not altered by his having paid it out ; for whether a fictitious or a real payment, he did it voluntarily after notice by the attorney of Williams, and, consequently, with a full knowledge of his liabilities. The money raised on execution is always considered in the custody of the law, and the sheriff, being the ministerial officer of the Court, . should, under its order and direction, make the proper application of it. Why allow this officer a discretion in this matter which the law does not warrant, but in every instance condemns ? I fully accord with the Court in the case reported in 1st Strobhart's Reports, 24, that it belongs to the Courts to advise and command its own officers—to dispose of the funds collected under its process—to decide the conflict of suitors as to such funds, and that in the exercise of these functions its power is complete. Where a case ari-

ses in which *equitable* rights are involved and it is doubtful who is entitled to the money, the Court may, in its discretion, forbear a summary order, and leave the claimants to litigate their rights by suit.

In this case, it is no answer to say, that the sheriff is liable by suit to the injured creditor.   So he is, where he refuses to make a *return ;* and it cannot be doubted but that it is competent to the Court to compel him by attachment to do his duty in this respect.   Without this summary remedy in the Court, its officer is placed above and beyond its control, and execution creditors can only recover their money at his option and pleasure.   If it is conceded that the Court has the power to order a *return* of executions, the principle itself is conceded, and the Court can direct the application of the money.

In this case, no action for a *false return* could be maintained ; the return of the sheriff, as far as it went, was true ; it was not controverted.   Williams may have a right of action against the sheriff for neglect of duty, but I cannot see the propriety of compelling him to resort to an action at law against the sheriff and his securities, when, in my opinion, he has, through the aid of the Court, an efficient and summary remedy.   I am not aware of any principle of law which denies to an execution creditor the remedy allowed in this case by the Court below.   The power is incident to every Court, and its exercise is highly salutary, and prevents tedious and protracted litigation.   The practice which has prevailed in the Courts of the State, I believe to be sound in principle, and its obvious utility no one doubts. A contrary practice will, I fear, make an execution, which is the end, but the beginning of a law suit.