177 So.2d 193 (1965)
The KIPPY CORPORATION, Talbot W. Trammell, Dempsey Transportation, Inc., Charles C. Papy, Jr., Alex Mathas, David Katz and Carl Katz, individually and as father and next friend of David Katz, a minor, and John Lacz, and McMurry & Co. of Tampa, Petitioners,
v.
Sherwood COLBURN, Insurance Commissioner of the State of Michigan, as Receiver of Michigan Surety Company, Highland Realty Co., Carey, Goodman, Terry & Dwyer, Springer Motor Co. and Hollywood Bus Lines, Inc., Respondents.
No. 32879.
Supreme Court of Florida.
June 30, 1965.
*194 Talbot W. Trammell and Kenneth L. Ryskamp, Miami, for petitioners.
Stephen W. Sessums (of Albritton, Sessums & Gordon, Tampa), for respondents.

ON PETITION FOR REHEARING GRANTED
O'CONNELL, Justice.
The petitioners, who were appellees in the District Court of Appeal, seek review by certiorari of that decision reported as Colburn v. Highland Realty Co., Fla.App. 1963, 153 So.2d 731. We agree with petitioners that we have jurisdiction to review this cause because of a conflict in decisions to be discussed later.
The facts necessary to our decision are taken from the published report of the District Court's opinion. In chronological order they are:
On March 8, 1962, pursuant to a decree pro confesso previously taken, the chancellor entered a final summary decree against Colburn, et al., the respondents-defendants, referred to herein as Colburn.
On March 14, Colburn petitioned for and the chancellor issued an order staying performance and enforcement of the decree in order to give Colburn an opportunity to petition to vacate the decree pro confesso entered against him.
On March 16, Colburn filed such a petition which was denied by an order entered April 24th.
On May 25, acting on the plaintiffs' motions, the chancellor entered an order vacating the stay order and at the same time entered a "Second Amended Summary Final Decree." This decree provided that the decree of March 8th "be and it is hereby amended in its entirety as follows:". Then followed a full and complete final decree substantially identical with that one dated March 8th, except that sums of money which had accrued during the interim were recomputed to the date of the latter decree.
On June 22, 1962, Colburn filed a notice of appeal addressed to the "Second Amended Summary Decree" dated May 25th and rendered, i.e., filed for record on May 28th.
As noted in the District Court's opinion, these petitioners moved to dismiss the appeal in that court. The court denied the motion to dismiss and then proceeded to review the merits of the Second Amended Summary Final Decree as if it were the final decree in the cause.
*195 We have no difficulty in agreeing with the District Court that the appeal was taken to that court within 60 days of the rendition of the decree of May 25th. It was also taken within 60 days of the entry of the decree of March 8th, because the timely filing of the petition to vacate the decree pro confesso prevented that decree becoming absolute and tolled the running of the appeal time until that petition was denied on April 24th. But this discussion is academic, for the respondent Colburn appealed from the decree of May 25th and not that of March 8th.
The question here is not whether the notice of appeal was timely filed. Rather, it is whether the chancellor, some 30 days after denial of the petition to vacate, at which time the decree of March 8th had under the rules become absolute, still had the power, authority and jurisdiction to set aside that decree and enter a new one in its stead.
In its opinion the District Court held that the chancellor did have the authority to vacate the first decree and enter the new one under these circumstances. That court recognized that a final decree based upon a decree pro confesso becomes absolute 10 days after entry, Rule 3.10 F.R.C.P., 31 F.S.A., and that decrees in general become absolute after expiration of the 10-day period for filing a petition for rehearing. Rule 3.16 F.R.C.P. However, the District Court held that the order staying performance and enforcement of the decree of March 8th had the effect of tolling the time within which the first decree would become absolute. Therefore, said the District Court, "the former decree had not become absolute when the latter one was entered, and the lower court had jurisdiction to enter it."
Under any view it seems certain that the decree appealed from, the Second Amended Final Decree, can be considered to be the final decree on the merits in this cause only if the chancellor had the power, authority and jurisdiction to vacate the first decree and enter the second one. It is equally certain that the chancellor possessed this authority only if the District Court was correct in holding that the stay order had the effect of preserving his jurisdiction over the first decree and preventing its becoming absolute.
The basic question therefore is whether an order staying performance and execution of a final decree has the effect of preventing the final decree from becoming final and absolute and accordingly extending the time within which the trial court may exercise jurisdiction over the final order by altering, modifying, or vacating it. The District Court held that a stay order has this effect. We have previously held that such an order does not, as will be explained below.
The only authority under rule or statute known to us for entry of a stay order is that found in Rule 3.16 F.R.C.P. It seems likely because of the facts of this case that the chancellor relied upon this rule in entering the stay order here involved, but the result would have been the same had he operated on a theory of inherent power.
In Ganzer v. Ganzer, Fla. 1956, 84 So.2d 591, this Court had occasion to consider the effect of such a stay order. In that case we said "the purpose of a stay order provided for in Rule 3.16, supra, is to regulate the enforcement of the decree in the trial court. It does not pertain to nor affect appellant proceedings." This statement requires analysis in order to savor its full flavor.
The statement that a stay order does not affect appellate proceedings has to mean that it neither prevents an appellate court from taking jurisdiction of the order stayed, nor tolls nor interrupts the running of the time for appeal. The test by which we determine when a final order is subject to appellate review is its finality. Finality in turn is determined by whether the judicial labor required or permitted to be done by the trial court has been performed. As *196 we explained in the Ganzer case, supra, a final decree is not appealable until after a timely petition for rehearing is ruled upon because "the judicial labor has not been completed."
It follows then that if a stay order does not affect appellate proceedings it is because it does not affect the finality of the order stayed and neither reinvests nor prolongs the power of the trial court to perform further judicial labor in deciding the merits settled in the stayed order. If a stay order did either it would affect appellate proceedings involving an order stayed.
On this point we conclude that the decision of the district court of appeal is in conflict with our decision in Ganzer v. Ganzer, supra. The question then arises whether we should adhere to our decision in the Ganzer case or depart from it in favor of the District Court's view of the force and effect of a stay order. We have determined that our judicial system, the goals of the orderly administration of justice and our rules of practice and procedure all require that we adhere to the view expressed in the Ganzer case. Our reasons for doing so follow.
The principal function of courts is to resolve controversies in accordance with law. But the American sense of justice is not satisfied merely with having controversies resolved. So we have established two important goals which serve as guidelines to be sought and followed in settlement of all litigation. They are: first, that justice be as exact and as free from error as human fallibility of judgment permits; and, second, that litigation be finally terminated as quickly as due process and necessary reflection allows.
To some extent satisfaction of each of these goals requires some sacrifice or relaxation of the fullest achievement of the other, because in operation each conflicts and competes with the other. Thus, the ultimate in early and final termination of litigation would lead to requiring that final orders of trial courts become absolute and irrevocable immediately upon their entry with no change permitted by the trial court and no review provided by an appellate court. On the other hand, giving fullest reign to the goal of exact justice, as free from error as human judgment allows, would permit correction of error in an order whenever discovered without limitation of time. Quite obviously both goals cannot be attained, even in reasonable degree, if the pursuit of either predominates to the exclusion of the other.
Our present system embodied in our rules and statutes is designed to give reasonable force and operation to both principles by requiring some compromise and relaxation of each, but ignoring neither. The objective of an early and final end to litigation is modified in favor of the goal of justice free from error by rules, statutes and constitutional provisions for the correction of error both by the trial court itself on motion or petition for new trial, rehearing, or to vacate, or by another court by means of the appellate process.
Similarly, the objective of exact justice without error is also compromised in favor of an early and final end to litigation by requirements of rule and statute which limit the time and manner in which both trial and appellate courts may exercise the power to correct errors in final orders. If the correction of error is not sought within the time and manner provided the court involved has no authority to act and insofar as that court is concerned the matters decided are finally ended.
So it is that motions and petitions for correction of error by the trial court must be made within the time prescribed by rule or statute, usually 10 days from entry of the order. Rules 2.8, 3.10 and 3.16, F.R.C.P. Unless a proper motion or petition is filed within the allotted time the order becomes absolute and except as provided by the rules, notably Rule 1.38 and Rule 2.8, F.R.C.P., the trial court has no authority to alter, modify or vacate the *197 substance of the order. If such a motion is timely filed, or the trial court acts timely on its own initiative under Rule 2.8, F.R.C.P., the jurisdiction of the trial court continues until the motion or petition is disposed of, or the rehearing or new trial, if one is ordered, is had. Rule 1.3 F.A.R. "Rendition."
The jurisdiction of appellate courts to correct error in an order is likewise limited by statute and rule in that such a court has no power whatsoever to act in a cause unless the application for review be brought within the time and in the manner provided. Ramagli Realty Co. v. Craver, Fla. 1960, 121 So.2d 648.
These restrictions on the authority of trial courts to modify or vacate their final orders and on appellate courts to entertain appellate review constitute an implementation of the primary goal of an early final end to litigation. Without such restrictions and strict observance of them the goal of early and final end of causes would be wholly defeated.
This would be, or could be, the result if an order staying performance and execution of a final order were held to have the effect of preventing the stayed order from becoming final and either continuing or reinvesting jurisdiction in the trial court to modify or vacate the stayed order. Aside from the fact that a trial court could at will put off a litigant's right to appellate review, it could continue to deny the litigant the right to have entered an order finally disposing of his rights in a cause. A litigant is not only entitled to have his cause decided; he is entitled to know that an order deciding it is final and will not be disturbed, except on appeal, or under the conditions prescribed by the rules.
Furthermore, if a trial court may, by the mere expedient of entering a stay order, prevent a final order from becoming absolute and continue its jurisdiction over the order and the cause, all of the provisions of rule and statute limiting the time for corrective action in a trial court would become subject to nullification at the whim of the trial court.
We therefore hold that a stay order controlling performance or enforcement of a final order does not in itself prevent the order stayed from becoming final and absolute nor extend the jurisdiction of the trial court to alter, modify, or vacate the order stayed.
Because the basic question involved in this cause is the power and jurisdiction of a trial court to alter, modify or vacate a final order after expiration of the time provided in the rules for corrective action in that court, we think the decision of the district court is also in conflict with Ramagli Realty Co. v. Craver, Fla. 1960, 121 So.2d 648; Cortina v. Cortina, Fla. 1957, 98 So.2d 334; Pace v. Pace, Fla. 1930, 99 Fla. 859, 128 So. 488; Morrison v. Morrison, Fla.App. 1960, 122 So.2d 199; Batteiger v. Batteiger, Fla.App. 1959, 109 So.2d 602, and likes cases. In all of these cases the court either held that the trial court had no power to do anything to extend the time for taking appeal or stated that a trial court has no authority to alter, modify or amend the substance of a final order unless authorized to do so by statute or rule.
In Morrison v. Morrison, supra, the court distinguished between the power of a court to control the enforcement of an order and the power to amend or alter the substance of the order, saying, 122 So.2d at 201:
"Although the court retains the power to modify by subsequent order the time or manner of the enforcement of a final decree after it has become final, under our rules it does not retain the power, unless specifically provided by statute, to amend, modify or alter the principles of such final decree."
In Pace v. Pace, supra 128 So. at 489, we said:
"After the lapse of time as thus provided by rule * * *, final decrees *198 cannot be changed, added to, nor taken from, except as to the correction, nunc pro tunc, of mere clerical errors or misprisions, without resorting to the recognized processes of equity, based upon appropriate grounds."
The basis for these decisions is that a trial court has no authority to change or modify its final decree except that which is granted by rule or statute.
In Ramagli Realty Co. v. Craver, Fla. 1960, 121 So.2d 648, 651, this Court said:
"We have held on numerous occasions that, after the time for filing a timely and proper motion for new trial or petition for rehearing, the trial court may not directly or indirectly take any action to stay the running of the time within which the appeal must be taken. A trial court has no power to extend the time for taking an appeal nor may it, even with the consent of the parties, amend its decree or judgment to take effect at a later date for the purpose of extending the appeal."
While the Ramagli case, and others like it, center their attention principally on the question of a trial court's power to enter any order affecting the time for appeal, the decision in each involved the more basic question which we have been dealing with in this case. This question is whether a trial court has authority to change or modify its final order at a time and in a way not authorized in rule or statute. In Ramagli and like cases, it was essential that the court first decide that a trial court has no authority to change the substance of its final orders, except as provided by rule or statute. For if it had been decided that the trial court had jurisdiction to perform the judicial labor of so altering the final order, then under the rules and statutes the appeal time would as a matter of course be extended.
In all of these cases the fundamental principle at issue was whether the goal of an early and final end to litigation was to be preserved to the degree provided by rule or statute, or sacrificed entirely in favor of justice free from error. The same issue was at stake in Floyd v. State, Fla. 1962, 139 So.2d 873. In the Floyd case a majority of this Court held that a trial judge had the authority to vacate summary judgments previously entered by him, despite the fact that there was no provision of rule or statute giving him the power to do so.
In reaching that conclusion the majority receded from a contrary holding in Weisberg v. Perl, Fla. 1954, 73 So.2d 56. In the last cited case this Court in effect held that the trial court lacked jurisdiction to disturb a summary judgment because there was no authorizing statute or rule. Quite obviously the majority receded from the decision in the Weisberg case because of the harsh and somewhat inconsistent effect of the then existing rules which permitted timely correction by a trial court of all final orders except those summarily entered.
The specific problem presented in the Floyd case will not appear again because the rules have been amended to permit reconsideration of a summary final order. Rule 2.8 F.R.C.P. Nevertheless, to make certain that the several statements in that case concerning the power of a court to modify, alter or vacate its final orders are not misconstrued we feel that discussion of the facts presented by, and the decision of the majority in, the Floyd case is warranted.
In the Floyd case the plaintiffs filed a timely motion for rehearing and the trial judge without waiting for the parties to do so set the motion down for argument. After reargument and further consideration he vacated the summary orders previously entered. We therefore construe all of the statements in the majority opinion concerning a trial court's power to correct its mistakes to apply to these facts. So applied they mean simply that although the rules did not then provide for the reconsideration by a court of a summary final order, the court, nevertheless, had the same power to *199 reconsider such an order on a motion for rehearing timely filed as it had with respect to regular judgments. The only other effect which can reasonably be ascribed to such statements is that during the time for filing a motion for rehearing, or during the time one is pending, a trial court may of its own initiative, ex mero motu or sua sponte, order a rehearing or grant a new trial on any ground on which it might have done so on the motion of a party. (This is now permitted by Rule 2.8(d), F.R.C.P. We note in passing that Rule 3.16, the equity counterpart of Rule 2.8, does not contain a like provision. This difference in these two rules might be worthy of consideration by the appropriate committee of The Florida Bar.) Thus construed and limited we do not find the majority decision in the Floyd case to be in conflict with or overruled by this one.
The matter of a trial court's jurisdiction to act to change or vacate its final orders, both as such action affects the time for appeal and otherwise, has been a troublesome question to this and other courts in our state. The hope of settling, for the present at least, the uncertainty and conflicting decisions and views on this issue has led to the length of this opinion for which the author begs forgiveness by those who chance to read it.
We here decide that: (1) a trial court has no authority to modify, amend or vacate a final order, except in the manner and within the time provided by rule or statute; and (2) that an order staying performance and execution of a final order does not in itself prevent a final order from becoming absolute and, therefore, does not, during the life of such stay order, empower the trial court to vacate its earlier final order or enter a new one in its stead.
For these reasons we conclude that the District Court of Appeal should either have granted the petitioners' motion to dismiss or considered the Second Amended Summary Final Decree of May 25th as a postdecretal order and the appeal as an interlocutory appeal pursuant to Rule 4.2, F.A.R. This would allow the District Court to consider only the recomputation of interest in the decree of May 25th since this is the only matter determined in that decree which the trial court had authority to decide.
After rehearing our earlier opinion is withdrawn, the petition for certiorari is granted, the writ is issued, the decision of the District Court is quashed and the cause is remanded for further proceedings consistent herewith.
It is so ordered.
DREW, C.J., and THOMAS, ROBERTS, CALDWELL and HOBSON (Retired), JJ., concur.
THORNAL, J., agrees to conclusion.