496 So.2d 158 (1986)
ACCENT REALTY OF JACKSONVILLE, INC., Appellant and Cross/Appellee,
v.
Vincent A. CRUDELE, Appellee and Cross/Appellant.
No. 85-2722.
District Court of Appeal of Florida, Third District.
September 16, 1986.
Rehearing Denied November 17, 1986.
*159 Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill and Dale F. Webner, Tampa, for appellant and cross/appellee.
Payton & Rachlin and Harry A. Payton, Miami, for appellee and cross/appellant.
Before BARKDULL, BASKIN and PEARSON, JJ.
BASKIN, Judge.
Accent Realty of Jacksonville, Inc., [Accent Realty] appeals a final judgment on two grounds: first, Accent Realty asserts that res judicata or collateral estoppel bars the relief afforded Crudele; second, Accent Realty cites as error the trial court's ruling quieting title to property in the name of Vincent Crudele, free and clear of any Accent Realty lien. Crudele cross-appeals the trial court's order denying him attorney's fees pursuant to section 57.105, Florida Statutes (1983). We reverse the final judgment and affirm the order denying attorney's fees.
On December 27, 1979, vendor Crudele and vendee Don Waters executed, but failed to record, an agreement for deed. On January 25, 1982, ICS-Diversified, Inc., a creditor of Waters, recorded a judgment against Waters. In an attempt to satisfy its judgment, Accent Realty, to whom ICS assigned its interest in the judgment against Waters, delivered a writ of execution to the sheriff of Dade County on March 2, 1982. The writ failed to instruct the sheriff on which property he should levy, and the writ remained unsatisfied. In a separate proceeding, Crudele instituted a foreclosure action against Waters on March 19, 1982. In settlement of the foreclosure action, Waters quitclaimed his interest in the agreement to Crudele, and Crudele and Waters cancelled their agreement for deed on May 4, 1982.
Accent Realty delivered instructions for levy to the sheriff on September 22, 1983, directing the sheriff to execute on "property owned by" Waters pursuant to the agreement for deed. When the sheriff refused to levy on the specified property, Accent Realty filed a Motion for Writ of *160 Mandamus and To Determine Equities of Redemption, joining Crudele in the motion as an interested party. After conducting a hearing, the trial court granted mandamus and ordered the sheriff to levy on the property. The trial court reserved ruling on the Motion To Determine Equities of Redemption until it could conduct an evidentiary hearing to determine the priorities and amounts of the parties' interests. Crudele unsuccessfully petitioned this court for a writ of certiorari to review the order, and then intervened in the lawsuit between Accent Realty and Waters. In his Complaint in Intervention, Crudele alleged that Waters' interest had been extinguished by the quitclaim deed and the cancellation of the agreement for deed, and that no interest remained to which Accent Realty's lien could attach. Following a hearing, the trial court vacated its prior order granting mandamus and quieted title in Crudele as fee simple owner of the property, free of any lien claimed by Accent Realty. The trial court denied Crudele's motion for attorney's fees pursuant to section 57.105, Florida Statutes (1983). Accent Realty appealed and Crudele cross-appealed.
The first issue before us is whether the doctrines of res judicata or collateral estoppel barred the parties from relitigating Accent Realty's right to execute on Water's interest in the agreement for deed. Accent Realty maintains that the trial court's grant of mandamus directing the sheriff to levy on Waters' interest, followed by this court's denial of Crudele's petition for writ of certiorari, precluded the trial court from ruling adversely to Accent Realty on issues raised by Crudele's Complaint in Intervention. According to Accent Realty, the trial court lacked authority to vacate its final order of mandamus. Crudele counters that the order granting mandamus was not final, was properly vacated, and did not operate as a bar to the trial court's resolution of the issues raised in his complaint.
A final judgment or order on the merits operates as res judicata in a subsequent proceeding between the parties on the same cause of action. Albrecht v. State, 444 So.2d 8 (Fla. 1984); O'Brien v. Brickell Townhouse, Inc., 439 So.2d 982 (Fla. 3d DCA 1983); Sanchez v. Martin, 416 So.2d 15 (Fla. 3d DCA 1982). Similarly, the doctrine of collateral estoppel precludes parties from relitigating issues in a subsequent lawsuit based on a different cause of action. Trucking Employees of North Jersey Welfare Fund, Inc. v. Romano, 450 So.2d 843 (Fla. 1984); Mobil Oil Corp. v. Shevin, 354 So.2d 372 (Fla. 1977); City of Tampa v. Lewis, 488 So.2d 860 (Fla. 2d DCA 1986); DeMoya v. Lorenzo, 468 So.2d 358 (Fla. 3d DCA 1985). The entry of a final judgment or order is the common element that invokes the doctrines of both res judicata and collateral estoppel. Thomson v. Petherbridge, 472 So.2d 773 (Fla. 1st DCA 1985); Weigh Less For Life, Inc. v. Barnett Bank of Orange Park, 399 So.2d 88 (Fla. 1st DCA 1981).
Turning to the case before us, we find that, contrary to Accent Realty's contentions, the order granting mandamus did not bring either res judicata or collateral estoppel into play. An order is not final when judicial labor has not ended, see Kippy Corp. v. Colburn, 177 So.2d 193 (Fla. 1965); Ruth v. United States Fidelity & Guaranty Co., 83 So.2d 769 (Fla. 1955); Heverle v. Rasmussen, 103 Fla. 76, 137 So. 259 (1931); Thomson, and this order contemplates the performance of additional judicial labor in the form of an evidentiary hearing.[1] Thus, the order granting mandamus *161 was not final. Furthermore, our denial without opinion of the petition for writ of certiorari did not constitute an adjudication on the merits, see Ruth; Cheezem Development Corp. v. Maddox Roof Service, Inc., 362 So.2d 99 (Fla. 2d DCA 1978), cert. denied, 368 So.2d 1370 (Fla. 1979); Don Mott Agency, Inc. v. Harrison, 362 So.2d 56 (Fla. 2d DCA 1978), or establish the law of the case, Don Mott Agency. Thus, neither res judicata, collateral estoppel, nor the law of the case doctrine precluded the trial court from exercising its inherent authority over its interlocutory order, see North Shore Hospital, Inc. v. Barber, 143 So.2d 849 (Fla. 1962); Cadillac Fairview of Florida, Inc. v. Cespedes, 468 So.2d 417 (Fla. 3d DCA), review denied, 479 So.2d 117 (Fla. 1985); and vacating its order granting mandamus.
Next, we address the substantive issues raised by the parties: whether Accent Realty acquired a lien on Waters' interest in the agreement for deed prior to Waters' execution of a quitclaim deed to Crudele; and the effect on Accent Realty's lien of Waters' quitclaim of his interest to Crudele.
Accent Realty argues that it acquired a judgment lien on the property through Waters' interest when it recorded its judgment against Waters in the Dade County public records on January 22, 1982. Crudele contends that Accent Realty could not acquire a judgment lien on Waters' interest because Waters did not hold legal title to the property. We agree. A creditor may not acquire a judgment lien on property to which the judgment debtor does not hold legal title. Bauman v. Peacock, 80 So.2d 365 (Fla. 1955); First National Bank of Chipley v. Peel, 107 Fla. 413, 145 So. 177 (1933); Cheves v. First National Bank of Gainesville, 79 Fla. 34, 83 So. 870 (1920); Bowers v. Mozingo, 399 So.2d 492 (Fla. 3d DCA 1981). Thus, the recording of Accent Realty's judgment against Waters could not create a judgment lien on the property.
Although we agree that Accent Realty did not have a judgment lien, we find that on March 2, 1982, when the writ of execution was delivered to the sheriff, Accent Realty acquired an execution lien on Waters' interest in the agreement for deed. Hoffman v. Semet, 316 So.2d 659 (Fla. 4th DCA 1975); § 56.061, Fla. Stat. (1983). See Evins v. Gainesville National Bank, 80 Fla. 84, 85 So. 659 (1920); Smith v. Purdy, 272 So.2d 545 (Fla. 3d DCA 1983); Black v. Miller, 219 So.2d 106 (Fla. 3d DCA 1969). The execution lien entitled Accent Realty to the levy on and sale of Waters' interest in the agreement for deed, although not to the levy on and sale of the property itself. Hoffman; see Black.
Crudele asserts that Accent Realty could levy against Waters' interest only while the interest existed, and that when Waters executed the cancellation agreement and quitclaim deed, he extinguished his interest, leaving nothing to satisfy a levy. We disagree. An execution lien binds all the debtor's property that is subject to levy and sale. See Evins. Sale or assignment of a debtor's property subsequent to delivery of a writ of execution to the sheriff does not destroy an execution lien. See Love v. Williams, 4 Fla. 126 (1851). We conclude that Accent Realty's execution lien attached to Waters' interest in the agreement for deed on March 2, 1982, when the writ was delivered to the sheriff. The subsequent signing of the cancellation agreement on May 4, 1982, did not affect the viability of the execution lien. Accordingly, we hold that Crudele received Waters' interest subject to Accent Realty's lien.
As to the issue raised on cross-appeal, we find that the trial court correctly determined that justiciable issues existed, precluding an award of attorney's fees under section 57.105, Florida Statutes (1983).
*162 For these reasons, we reverse the final judgment and affirm the order denying the award of fees.
Reversed in part and affirmed in part.
BARKDULL, J., concurs.
PEARSON, Judge, concurring.
Although I agree that the panel's decision correctly states and, of course, correctly follows the existing pronouncements of the Supreme Court of Florida, I suspect it will come as a surprise to some to learn that a lien attaches to leviable personal property at the moment a writ of execution is placed in the hands of the sheriff. The foregoing proposition of law derives from this state's early adoption of a 1676 British statute "which limit[ed] the common law lien on the defendant's goods, by virtue of the fieri facias [the writ of execution], to the time such writ shall be delivered to the Sheriff," Kimball v. Jenkins, 11 Fla. 111, 123 (1866); see also Love v. Williams, 4 Fla. 126, 134 (1851). Since the common law lien attached to leviable personal property even earlier, namely, from the time the writ of execution was attested, the statutory change was designed to protect persons "who had purchased bona fide and for a valuable consideration from the defendant, between the teste of the writ and the day of its actual issue." Love v. Williams, 4 Fla. at 133-34. However, England and a substantial number of states in this country, recognizing that the 1676 act did not protect bona fide purchasers who purchased goods after the delivery of the writ of execution to the sheriff but before actual levy was made, enacted legislation declaring that an execution lien does not attach until the time of actual levy. See Murray, Execution Lien Creditors Versus Bona Fide Purchasers, Lenders and Other Execution Lien Creditors: Charles II and the Uniform Commercial Code, 85 Com.L.J. 485, 486-88 (1980). Florida, as the more modern cases cited in the panel opinion demonstrate, has not followed suit. Thus, even assuming, arguendo, that the appellee, Crudele, is deemed to be a bona fide purchaser for value of the agreement for deed (a matter we need not decide), the interest of the judgment debtor in the agreement is nonetheless encumbered by Accent Realty's execution lien.
NOTES
[1] The pertinent portions of the Order on Motion for Writ of Mandamus and To Determine Equities of Redemption are as follows:

ORDERED AND ADJUDGED:
1. That the Motion For Writ Of Mandamus is hereby granted and upon the further hearing set forth in paragraph two below, the Sheriff of Dade County, shall and is hereby ordered and instructed to levy upon the property which is the subject matter of the Agreement For Deed attached to the Motion as Exhibit "A" in satisfaction of [Accent Realty's] Judgment entered herein.
2. That the Court reserves ruling on the Motion To Determine Equities Of Redemption until such time as an evidentiary hearing is held to determine what parties have an interest in the property superior to [Accent Realty] and to determine the amount of such interest.