W. C. BARCLAY AND WIFE, *Plaintiffs in Error,* v. L. W. ROBERTSON, *Defendant in Error.*

Opinion Filed April 29, 1914.

1. A deed of land made by a husband directly to his wife for an alleged past, and inadequate consideration, when the husband is greatly indebted, is void as to a creditor of husband.

2. When a sale of a tract of land has been made under an execution issued upon a judgment against the owner, who had not lived on the land for more than three years, and who took no steps to have the land exempted as a homestead until more than a year after the sale under the execution and a sheriff's deed has been executed to the judgment creditor in pursuance of the sale, in an action of ejectment brought by the judgment creditor for the recovery of the possession of the land, the judgment debtor may not claim a homestead in the land sold under the creditor's execution.

Writ of Error to Circuit Court for Bradford County; J. T. Wills, Judge.

Judgment affirmed.

*A. Z Adkins,* for Plaintiffs in Error;

*D. E. Knight* and *J. E. Futch,* for Defendant in Error.

HOCKER, J.—L. W. Robertson brought an action of ejectment on July 16th, 1912, in the Circuit Court of Bradford County against W. C. Barclay and his wife, Mrs. W. E. Barclay, for the possession of two hundred and forty acres of land lying in said county, and mesne profits. There was a plea of not guilty, and on the trial the judge directed a verdict for the plaintiff, which was rendered, and judgment for the plaintiff followed. It appears from the record that the plaintiff below introduced in evidence a certified copy of a judgment obtained by Robertson against W. C. Barclay in the Circuit Court of Bradford County rendered after all pleas were withdrawn by Barclay, and his consent entered of record that judgment be entered against him for the full amount claimed by Robertson, *viz.*: $294.23; and also for $29.42 attorney's fees. This was done on the 24th of October, 1910. Execution issued on this judgment on the 28th of November, 1910, and was admitted in evidence for the plaintiff. The plaintiff below then introduced in evidence a sheriff's deed to the plaintiff of the land in dispute, sold to him at a sale under the execution.

Plaintiff introduced W. C. Barclay as a witness, who testified he was in possession of the land involved in this suit before October, 1910, but did not consider it his property. He was living on it part of the time—part of time had a tenant on it. Did not live on it in 1909 and 1910; lived there part of 1907 and 1908. In 1909 lived on the adjoining property—just off of the tract involved

in this suit. Lived at his mill, was engaged in the milling business just off the land. It was Mrs. Barclay's property, and Mrs. Barclay and witness had a tenant on it.

Plaintiff's witness, N. T. Rich, testified he was acquainted with the land, and its rental value was $100 per year.

The defendants offered in evidence a deed to the land in controversy from W. C. Barclay made directly to his wife on the 4th of October, 1910, for the nominal consideration of $10.00. Barclay stated his wife had been in possession since the deed was made by a verbal agreement since he bought it. Barclay says he moved from the place in the fall of 1908; had a tenant on it; considered Mrs. Barclay's tenant. He was there for three years. While Mr. Sweat, the tenant, was there Barclay and his wife had farming utensils and some hogs on the place. Mr. Sweat lived on the place in 1909, 1910 and 1911. Barclay did not move back to the place until 1912; would visit it in the meantime, sometimes once a month. He had eight or ten hogs on the place. Barclay lived at his mill adjoining the place in 1909, part of the year 1910 in Jacksonville, and in Raiford in 1911. He followed milling as an occupation in 1910 and 1911 up to 1912. Barclay admitted that when he executed the deed of the property to his wife he was indebted to the Georgia Supply Company in about the sum of $180.00, to C. A. Anderson in the sum of about $2,700.00, and that the supply company had a suit pending against him at the time the deed was made to his wife. At the time he owned two sections of land outside of this land. All the lands not described in the deed to his wife were mortgaged, but not for their full value. Some had been sold under mortgage foreclosure, but did not bring enough to satisfy the

mortgage. Barclay's attorney admitted there was a deficiency decree of $1,608.00 in favor of C. A. Anderson on a mortgage foreclosure, which mortgage was given before the date of the deed to Mrs. Barclay. It was also admitted that about $100.00 was due the Georgia Supply Company. Over six hundred acres was sold under this judgment. After some further immaterial testimony the plaintiff below then renewed his motion to strike out the deed from Barclay to his wife, which the court granted. Barclay then stated that he had received from his wife in 1905 and later about $600.00 which she had made, and let him have it to go into business with, and deeded this land to her in consideration of this money. He got the money from her in 1906, 1907 and 1908. He considers the place he deeded her worth $1,500.00 or $2,000.00. There was other testimoiny as to the value of the property, but none changing the legal effect of that already admitted. The court having ruled out the deed from Barclay to his wife, Barclay then claimed a homestead exemption on the property in dispute.

Barclay testified that he resided in Jacksonville October 24, 1910, and was the head of a family, a wife and two daughters; that he then owned the property in dispute, and owned his homestead there. On the first Monday in January, 1911, the sheriff sold the property to plaintiff under his execution. The sheriff's deed to plaintiff is dated 19th of January, 1911. Barclay was in Jacksonville on October 24th, 1910, only temporarily. His family was living there and he went home occasionally; that his wife and two daughters were in Jacksonville; that his wife was there under treatment of a doctor, and one daughter was at school; that he claimed this place, or 160 acres of it as his home; that he lived in Raiford in 1911, but did not own a home there; this place (place in

dispute) was rented to a tenant in 1911; that he did not own any other land than this designated as his homestead. He had stated the numbers of the land he claimed as a homestead. The other 80 acres he had deeded to Mrs. Barclay.

On cross-examination Mr. Barclay stated: "I owned this 160 acres of land on October 24, 1910—owned it up to that time. (He deeded to his wife the 4th of October, 1910). I stated to the jury this morning that I did not own this land, and I now state to you that I do own it, because I want the land to claim a homestead there. It was a homestead. I testified under a misapprehension this morning, that I had claimed the land and did not claim any interest in it. I have been testifying to the truth to the best of my knowledge. I am not changing my testimony to conform to the laws of the land. I am testifying to the best of my knowledge, to the truth. I claim this homestead. I knew this morning that I had a homestead, and have not changed my mind. The deed shows that I have given Mrs. Barclay a deed to it for a consideration. I was advised that I had a right to claim the homestead. I cannot explain why I testified this morning that I did not own it and did not claim it, and why I now testify why I do own it and claim it as a homestead, only that I was advised that I had a right to take it. I am testifying by the advice of counsel. I left the place that I now claim as a homestead about November, 1908, and I did not return to live on it until about the 1st of January, 1912, to live on it permanently."

For several years prior to 1908, and during all that time Barclay testified he lived where it was most convenient to look after his mill business. He further testified that his family was out of Bradford County about 14 months; that they lived at some other place in Brad-

ford County when there, than this particular piece of land. About one year they lived on an adjoining tract. He never claimed citizenship in Duval County, never voted there. He came back to vote once in the Raiford precinct. He lived on the adjoining forty to this land for more than a year during latter part of 1908 and 1909. He owned it at the time. He built on this forty, when he went there, several houses. His mill was on it. He rented the property in dispute in 1909, 1910 and 1911. The tenant understood it was his wife's property. He made all contracts with the tenant. He considered he was going to give it to his wife at that ime and promised it to her.

The evidence having been concluded the plaintiff renewed his motion for a peremptory instruction in his favor, which was granted, and the jury found a verdict for the plaintiff, mesne profits having been waived. Judgment was entered for the plaintiff for the possession of the land described in the sheriff's deed.

There are several assignments of error, but none of them merit discussion in this opinion except the one questioning the action of the court in striking from the evidence the deed made by Barclay to his wife, and the one questioning the action of the court in directing a verdict for the plaintiff. As to the first, it abundantly appears that when this deed was made Barclay was deeply indebted, if not insolvent; that the consideration, if any, was a past one, moneys advanced by the wife sometime before the deed was made to her; that the deed to the wife was made to protect the property against his creditors; nor does it appear that even the alleged past consideration was an adequate one; the burden was on the appellant to show it. Claflin v. Ambrose, 37 Fla. 78,

19 South. Rep. 628. We do not think the trial judge erred in striking this deed from the evidence.

The only other question demanding consideration is whether the plaintiff in error if he had any right of homestead in the land in question had abandoned and lost such right. The land had been levied on and sold under the judgment and execution of the defendant in error. No steps whatever were taken by the plaintiff in error to have the land or any part of it set apart as a homestead We hear nothing of a right of homestead until in the midst of the trial of this ejectment suit, and after the court had stricken out the deed from the plaintiff in error to his wife as fraudulent and void to creditors, then the question of a homestead was raised. The plaintiff in error had not lived on the land since 1908. He had a tenant on it. If he ever had a homestead right in this land we think he had abandoned it. Such a right depending largely as it does upon matters *in pais,* should be exercised within a reasonable time. Section 2521 Gen. Stats. of 1906, indicates the policy of our law in such a case. It is as follows:

"Whenever a levy shall be made upon the lands or tenements of such head of a family whose homestead has not been set apart and selected, such person, his or her agent or attorney, may in writing notify the officer making such levy, by notice under oath made before any officer of this State duly authorized to administer the same, at any time before the day appointed for the sale thereof, of what he regards as his or her homestead, with a description thereof, and the remainder only shall be subject to sale under such levy."

No attempt was made to follow this section, or in any other way to have the homestead right determined and ascertained. The deed to the defendant in error had

been made a year and a half before he brought this eject-ment suit. We think it clear that the Circuit Judge com-mitted no reversible error in directing a verdict for de-fendant in error.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.