THE FIRST NATIONAL BANK OF CHIPLEY, a Corporation, *Appellant*, vs. C. E. PEEL and R. W. PEEL, *Appellees*.
145 So. 177.
Opinion filed December 15, 1932.
Petition for rehearing denied January 9, 1933.

*James N. Daniel,* for Appellant;
*John H. Carter* and *John H. Carter, Jr.,* for Appellees.

BUFORD, C.J.—On November 7th, 1929, judgment was entered in the Circuit Court of Washington County against C. E. Peel and R. W. Peel for the sum of $659.18, plus $9.90 costs. Execution was issued on the 5th day of December, 1929. Execution was returned unsatisfied. On the 15th day of July, 1930, the judgment creditor filed bill of complaint to subject certain real estate, one · 55-acre tract to the execution, it being alleged that this and one 80-acre tract of land were contiguous and were

owned by C. E. Peel, although the record title to the 55-acre tract was in the brother of C. E. Peel, one R. W. Peel, and it was alleged that the said R. W. Peel held the said 55-acre tract in trust for C. E. Peel. The record shows that the adjoining tract of 80 acres had been conveyed by the former owners thereof to C. E. Peel but that the deed conveying the same had not been recorded.

On interrogatories being answered by C. E. Peel, it developed that the allegations in this regard were true. C. E. Peel filed answer to the bill, however, and claimed both tracts as exempt to him as his homestead and prayed injunction against sale.

The record shows that the salient facts of the case are: In 1923 C. E. Peel, with the help of his father, acquired the 55-acre tract, and as he says, for safekeeping had the deeds made conveying the record title to the brother of C. E. Peel one R. W. .Peel, in whom legal title had since remained. It is evident, however, that R. W. Peel holds the title in trust for C. E. Peel.

The 80-acre tract was acquired by C. E. Peel sometime prior to January 16, 1927, upon which date C. E. Peel was married, but the deed was not recorded. On March 24, 1928, a child was born, the issue of the marriage of C. E. Peel.

From long prior to the marriage of Peel and until about July 15, 1930, the date the bill of complaint in this case was filed, Peel made his home on certain turpentine locations belonging to one Hutchinson, for whom he worked, and there is no evidence that he had taken any steps or performed any act converting or tending to convert either or both of the tracts of land here involved into a home further than the acquiring of title to the same. At the time the judgment was rendered Peel had not in any manner, so far as the evidence in this case discloses, taken any steps toward etablishing a home on either of

the tracts of land. In fact, his dealing with the land up to that time was in law inconsistent with the intention of making it his homestead. He allowed the legal title to the 55-acre tract to remain in another party, and he held the conveyance of the 80-acre tract unrecorded.

Under the provisions of section 2802 R. G. S., 4488 C. G. L., judgments of the circuit courts create a lien and are binding upon the real estate of the defendant in the county where rendered. Such judgments do not create a lien on equitable estates and such estates are not subject to execution. Sebring vs. O'Rourke, 101 Fla. 885, 134 So. 556. When judgment in this case was rendered in Washington County on November 7, 1929, it became a lien on the 80-acre tract of land involved because at that time this tract of land had not acquired the status of a homestead or of a part of a homestead.

Whether or not the 55-acre tract may be held to be exempt as constituting a part of the homestead depends upon whether or not Peel's occupancy of it by moving himself and his family thereon for the purpose of claiming it as a homestead occurred prior to or after the institution of the suit by creditors bill. In other words, if Peel proceeded to give to that tract of land the homestead status before the institution of the suit filed to subject it to the judgment that it would be exempt; but, if he performed that act after the institution of the suit, it could not have the effect of making the property exempt as homestead because the decree would establish the rights of the parties as of the date of the institution of the suit. Aldrich vs. Boice, 56 Kan. 170; 29 C. J. 862; 42 Ohio St. 139. A judgment of a court of law is not a lien upon land to which the judgment debtor has no legal title. Cheves vs. First National Bank, 79 Fla. 34, 83 Sou. 870. See section 4488 (2802) C. G. L.; Jacobs vs. Scheurer, 62 Fla. 216, 57 Sou. 356; Miller vs. Berry,

78 Fla. 98, 82 Sou. 764; Sebring v. O'Rourke, 101 Fla. 885, 134 Sou. 556.''

The demurrer to the answer and motion to strike the answer interposed by Peel raises the question as to whether or not such answer is sufficient to show that the property involved is exempt from forced sale under execution as the homestead of the judgment debtor.

The demurrer and motion to strike was overruled. There was also a later order striking a replication of the complainant, but it is unnecessary for us to take cognizance of this.

While we have heretofore held that the homestead right may be protected by the homestead claimant at any time after it has once been established, it does not follow that the homestead status may be brought into being at any time to the exclusion of preexisting liens or conveyances.

In the case of Pasco vs. Harley, et al., 73 Fla. 819, 75 Sou. 30, it is said:

"Where judgment and execution liens upon a debtor's property are obtained by a creditor in enforcing payment of a debtor's promissory notes at a time when the debtor was not the head of a family and consequently not entitled to homestead exemptions, the debtor upon subsequently becoming the head of a family by marriage, is not entitled to homestead exemptions in the property on which the statutory judgment and execution liens already exist, to the exclusion of the pre-existing liens.

The Constitution forbids judgment and execution liens only on 'exempted property' and the property of a person who is not the head of a family is not 'exempted property' under the Constitution.''

In the opinion in this same case it is said:

"A statutory lien is as binding as a mortgage and has the same capacity to hold land, so long as the statute preserves its force. Rankin vs. Scott, 12 Wheat. (U. S.) 177. There can be no difference in principle

between a mortgage and a statutory lien. The one is as binding as the other. Andrews vs. Doe ex dem. Wilkes, 6 How. (Miss.) 554, text 568; Moseley v. Edwards, 2 Fla. 429, text 439; Kimball vs. Jenkins, supra."

And, further, in the same opinion it is said:

"The right to the 'exemptions' may accrue after the property is acquired, by the owner becoming 'the head of a family residing in this State.' The right to the 'exemptions' may be lost after it accrues by the owner ceasing to be 'the head of a family residing in this State.' Mathews v. Jeacle, 61 Fla. 686, 55 South. Rep. 865; Herrin vs. Brown, 44 Fla. 782, 33 South. Rep. 522; Johns vs. Bowden, 68 Fla. 32, 66 South. Rep. 155. Or as to real estate by its abandonment as the home of the family. Barclay v. Robertson, 67 Fla. 416, 65 South. Rep. 546; Murphy v. Farquhar, 39 Fla. 350, 22 South. Rep. 681; McGregor v. Kellum, 50 Fla. 581, text 589, 39 South. Rep. 697."

In this case the judgment became a lien on the 80-acre tract on the date of its rendition and that lien could not be cancelled by the attempted conversion of the property into a homestead after the lien attached.

In Semple v. Semple, 82 Fla. 138, 89 Sou. 638, will be found a correlation and discussion of authorities and especially cases heretofore decided by this Court in regard to the question here involved. The majority opinion was written by Mr. Chief Justice Browne and there was a dissenting opinion prepared by Mr. Justice Whitfield, concurred in by Mr. Justice West. Both opinions, however, recognize the rule to be that "It must appear that the lands were actually used or manifestly intended to be used as a part of the home of the family," and further that the manifest intention is to be shown by proof of preparations made to occupy it immediately as a homestead. Otherwise a judgment lien will attach.

In Milton vs. Milton, 63 Fla. 533, 58 Sou. 718, William Milton, the head of a family residing in this State, in-

herited with others from his mother the land on which she was living as her home at her death. The estate in the land which by the statute descended to William Milton was under the constitution subject to be claimed by him as his homestead, he then being the head of a family residing in this State; and if, when he inherited the land, it was, in addition to being subject to be occupied by him and claimed as his homestead, also and at the same time, by operation of the statute, subject to the lien of the judgment obtained against William Milton before his mother's death, the land was occupied by him and his family as his only homestead before his interest in the land was by executive sale subjected to the lien of the judgment against him, and his homestead exemption rights under the constitution being duly asserted by occupancy, and claim of exemption from forced sale, were given priority over the claim of his creditors under a statutory lien of their judgment against him.

It is not enough that the judgment debtor may assert that he at the time judgment was rendered entertained the intention to eventually occupy the lands as a homestead, but there must be *manifest* intention to immediately occupy it as a homestead. In this connection *manifest* means: apparent by examination, open, visible, act by which the intention of the owner may be apparent to others, and which will constitute evidence of such intention.

The manifestation of the intention to occupy the 80-acre tract involved here as a homestead was entirely absent at the date of the judgment and, so far as the record in this case shows did not occur until more than seven months thereafter.

From the state of the record we cannot say that the learned Circuit Judge committed error in holding the 55-acre tract exempt to Peel as his homestead. We,

therefore, reverse the order insofar as it applies to the 80-acre tract of land, but affirm the same insofar as it applies to the 55-acre tract, with directions that the court below now cancel the former order and enter an order not inconsistent with this opinion, and do thereupon conduct such further proceedings herein as may be in accordance with law and equity.

Reversed in part, with directions, and costs of appeal taxed against appellant and appellee in equal proportions.

WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

ELLIS, J., concurs specially.

ELLIS, J. (Concurring).—I agree to the conclusion reached but I think the case of Pasco vs. Harley, 73 Fla. 819, 75 South. Rep. 30, is not analogous. In Novemer, 1915, when the judgment was otained against Harley he had not acquired the status of head of a family. He did not marry until a month after the lien of the judgment had attached to the land claimed by Harley as exempt from forced sale. In the case at bar, C. E. Peel had acquired the status of head of a family and was the owner of the two tracts of land, in one he held the equitable title and in the other the fee simple, when the judgment was obtained against him and his brother R. W. Peel.

In the Pasco case it was a question of Harley's status when the judgment was obtained. In the case at bar it is a question of Peel's occupancy of the land as a home when the judgment was obtained. Harley was not the head of a family but he resided on the land. Peel was the head of a family but did not reside on the land.

In each case the judgment lien attached and became binding on the real estate of the defendant in the county where the judgment was rendered.

Now this Court holds that in the Peel case, as in the Pasco case, the real estate claimed as a homestead is subject to forced sale under the execution issued upon the judg-

ment.  The effect of the holding is that when a judgment at law creates a lien upon the real estate of a defendant that lien cannot be extinguished by the defendant by marrying or becoming the head of a family after the judgment created a lien upon the land, or, being the head of a family, by merely moving upon the land with his family and setting up a home there; that in such cases the real estate claimed as a homestead is not ''exempt from forced sale under process of any court'' although the Constitution provides that a ''homestead'' owned by the head of a family residing in this State ''shall be exempt from forced sale.''  In each case, the Pasco case and the Peel case, Harley and Peel were heads of families residing in this State and living on the land as a home when it was attempted to be taken from them by forced sale under process of court.

There is little or no analogy between the lien of a judgment and the lien of a mortgage insofar as enforcement is involved.  In one case the sale is a forced sale, in the other it is not a forced sale.  So by this case the doctrine is established that the words of the Constitution are subject to some modification, so that they mean that the owner of land who is the head of a family residing in this State upon the land claimed by him as his homestead is not entitled to its exemption from forced sale if the judgment which created the lien upon the land was obtained before the owner acquired the status of head of family or had moved on the land with his family to live there.  In other words, the Constitution is not effective to impair a statutory lien upon land created before the land acquired the character of a homestead.