# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Nos. 1D2021-1543
1D2021-1544
1D2021-1545
1D2021-1546
1D2021-1547

_____

RALPH WALDO EMERSON IV,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Thomas V. Dannheisser, Judge.

June 4, 2025

ON MOTION FOR REHEARING

WINOKUR, J.

We grant the appellant's motion for rehearing, withdraw our opinion and substitute the following in its place. For the reasons that follow, we affirm the sentence that Appellant Ralph Waldo Emerson IV ("Emerson") challenges on appeal. However, we certify a question of great public importance to the Supreme Court of Florida.

# I

Emerson entered a plea of nolo contendere. Under Florida Rule of Appellate Procedure 9.140(b)(2)(A), a defendant "*may not appeal* from a guilty or nolo contendere plea *except as follows*," and lists several circumstances where appeal is permitted. (Emphasis supplied). The first permitted circumstance involves reservation of right to appeal a prior dispositive order of the lower tribunal. Fla. R. App. P. 9.140(b)(2)(A)(i). Emerson did not reserve any issue for appeal. A defendant pleading guilty[1] may otherwise appeal *only* the following matters:

> a. the lower tribunal's lack of subject matter jurisdiction;
> b. a violation of the plea agreement, if preserved by a motion to withdraw plea;
> c. an involuntary plea, if preserved by a motion to withdraw plea;
> d. a sentencing error, if preserved; or
> e. as otherwise provided by law.

Fla. R. App. P. 9.140(b)(2)(A)(ii). Except for a claim that the trial court lacked subject matter jurisdiction, rule 9.140(b)(2)(A) does not permit appellate consideration of any issue that the appellant did not preserve, and does not include any exception that would permit consideration of unpreserved fundamental error. *See State v. Dortch*, 317 So. 3d 1074 (Fla. 2021).[2]

Emerson argues that the trial court committed fundamental error during the sentencing process by (1) failing to conduct a competency hearing and (2) by entering a final order determining he was competent. Unlike the defendant in *Dortch*, Emerson does not claim that the court failed to take steps to determine his

---

[1] We use the term "guilty" to include "nolo contendere" throughout this opinion.

[2] *Dortch* also rejected the suggestion that the phrase "as otherwise provided by law" in rule 9.140(b)(2)(A)(ii)e. provides an independent basis to review fundamental error following a guilty plea, concluding that "there is no law that authorizes Dortch's direct appeal in these circumstances." *Id.* at 1083.

competency prior to entering his plea, so he does not present a claim of involuntary plea. Rather, Emerson claims that his sentencing was improper because his competency was not properly determined prior to sentencing. Therefore, this appeal raises the following question: After *Dortch*, can a defendant who entered a plea of guilty raise an unpreserved claim of fundamental error in the sentencing process?

The answer to that question depends on the answer to a second one: Is the phrase "sentencing error" in rule 9.140(b)(2)(A)(ii)d. defined the same as it is in Florida Rule of Criminal Procedure 3.800(b), as set forth in *Jackson v. State*, 983 So. 2d 562 (Fla. 2008) (limiting the phrase "sentencing error" that may be brought by rule 3.800(b) motion to errors in the sentencing order and excluding errors in the sentencing process)?

If the answer to this second question is "yes," then the answer to the first question appears to be "no." Applying *Jackson*'s definition of "sentencing error" to rule 9.140(b)(2)(A)(ii)d., a defendant pleading guilty may appeal only an error in the sentencing order, but not one that occurred in the sentencing process. Under this construction of rule 9.140(b)(2)(A)(ii)d., we should summarily affirm Emerson's sentence.

Nevertheless, we acknowledge that applying *Jackson*'s definition of "sentencing error" to rule 9.140(b)(2)(A)(ii)d. prevents a defendant who entered a plea of guilty from ever successfully challenging an error in the sentencing process—even if that error was preserved. Thus, Emerson's claim exposes a gap in the appealability of issues following a guilty plea.

But even if rule 9.140(b)(2)(A) did not mandate summary affirmance, we would still affirm because no fundamental error occurred.

Accordingly, while we affirm the sentence, we certify the following question to the Supreme Court as one of great public importance:

UNDER RULE 9.140(b)(2)(A)(ii), CAN A DEFENDANT WHO ENTERED A PLEA OF GUILTY OR NOLO CONTENDERE RAISE ON APPEAL A CLAIM OF UNPRESERVED FUNDAMENTAL ERROR IN THE SENTENCING PROCESS?

## II

After Emerson entered his plea but before his sentencing, defense counsel moved for appointment of a psychiatric expert to determine if Emerson was competent to proceed. Counsel explained that he had just discovered cause to question Emerson's competency. After the trial court granted the motion, a psychologist performed a competency evaluation and submitted a report. The psychologist concluded Emerson was competent to proceed. The trial court, however, never conducted a hearing or made a final determination as to Emerson's competency before sentencing him. Emerson did not object at sentencing to the lack of a competency hearing or determination.[3]

Again, Emerson denies that he is challenging the voluntariness of the plea because the issue of his competency occurred *after* he entered his plea. For this reason, Emerson argues, *Dortch* does not foreclose his claim. Likewise, Emerson argues that the claimed error was not a "sentencing error" as that phrase was defined in *Jackson*, so the requirement of rule 9.140(b)(2)(A)(ii)d. that such an error cannot be raised on appeal following a guilty plea unless preserved does not apply either. Rather, Emerson argues, the claimed error occurred in the "sentencing process," as *Jackson* defines it, so he may raise it on appeal without preservation below if the error is fundamental. To address this claim, we review the history of two matters intertwined in this case—appeals of sentencing errors and appeals following a guilty plea—as well as describe the holding of *Dortch*.

---

[3] As noted above, Emerson could not have presented his claim of a sentencing process error by filing a motion under Rule 3.800(b). *See Parker v. State*, 399 So. 3d 1224, 1228 (Fla. 1st DCA 2025) (holding that a rule 3.800(b) motion did not preserve a claim because the claim "concern[s] errors in the sentencing process" (citing *Jackson*, 983 So. 2d at 572)).

## A. *Appeal of sentencing errors*

To address the appealability of sentences in light of the Criminal Appeal Reform Act of 1996, our supreme court created a new rule in the rules of criminal procedure. *See Amends. to Fla. Rule of App. Proc. 9.020(g) & Fla. Rule of Crim. Proc. 3.800*, 675 So. 2d 1374, 1375 (Fla. 1996) (establishing Fla. R. Crim. P. 3.800(b)); Ch. 96–248, § 1, Laws of Fla.

Rule 3.800(b) now permits defendants to raise a sentencing error after sentencing, by motion to correct sentencing error filed either within thirty days following rendition of sentence, or pending appeal before the first brief. *See* Fla. R. Crim. P. 3.800(b); *Amends. to the Fla. Rules of Crim. Proc.*, 685 So. 2d 1253, 1271 (Fla. 1996) (extending the time permitted to file a motion under rule 3.800(b) from ten days to thirty days); *Amends. to Fla. Rules of Crim. Proc. 3.111(e) & 3.800 & Fla. Rules of App. Proc. 9.020(h), 9.140, & 9.600*, 761 So. 2d 1015, 1021–22 (Fla. 1999) (permitting a defendant to file a rule 3.800(b) motion during pendency of appeal). Rule 3.800(b) obviates the need for an appellate court to determine whether a sentencing error is fundamental and can be raised without proper preservation, because all sentencing errors, even fundamental ones, must first be raised at sentencing or by rule 3.800(b) motion. *See Brannon v. State*, 850 So. 2d 452, 456 (Fla. 2003) (holding that "the failure to preserve a fundamental sentencing error by motion under rule 3.800(b) or by objection during the sentencing hearing forecloses them from raising the error on direct appeal").

The Supreme Court specifically defined what constitutes a "sentencing error" for the purposes rule 3.800(b) in *Jackson*. The Court drew a distinction between errors in the sentencing order and errors in the sentencing process, holding that rule 3.800(b) only encompasses the former. *Jackson*, 983 So. 2d at 566. Rule 3.800(b) applies to "errors in orders entered *as a result of* the sentencing process—in other words, errors in cost and restitution orders, probation or community control orders, or in the sentence itself." *Id.* (emphasis supplied). Conversely, errors "occurring during the sentencing process" may not be raised by rule 3.800(b) motion and are subject to the contemporaneous objection rule. *Id.*

5

Consequently, unpreserved sentencing-process errors "may be considered on appeal only if the error is fundamental." *Id.* at 574.

The defendant in *Jackson* had not entered a guilty plea, so it did not address whether its rules would apply the same way if the defendant had pleaded guilty.

B. *Appeal following guilty plea*

In 1976, the State enacted section 924.06(3), addressing appeals following a guilty plea. Ch. 76–274, § 7, Laws of Fla. The statute prohibited such appeals unless the defendant made an "express reservation" of the right to appeal. § 924.06, Fla. Stat. (1976 Supp.) In *Brown v. State*, 376 So. 2d 382 (Fla. 1979), the supreme court clarified that no appeal following a guilty or no contest plea was permitted unless the reserved issue was dispositive of the case.

The supreme court also addressed section 924.06(3) in *Robinson v. State*, 373 So. 2d 898 (Fla. 1979). There it noted that a "plea of guilty cuts off any right to an appeal from court rulings that preceded the plea in the criminal process including independent claims relating to deprivations of constitutional rights that occur prior to the entry of the guilty plea." *Id.* at 902 (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). After that cut-off, "the only points available for an appeal concern actions which took place contemporaneously with the plea." *Robinson*, 373 So. 2d at 902. Those points are (1) subject matter jurisdiction, (2) the illegality of the sentence, (3) the failure of the government to abide by the plea agreement, and (4) the voluntary and intelligent character of the plea. *Id.* As appeals of those matters were not included in section 924.06(3), *Robinson* found the statute constitutional.

As part of the aforementioned Criminal Appeal Reform Act of 1996, the Legislature enacted section 924.051(4), which stated that a defendant pleading guilty "may not appeal the judgment or sentence" without "expressly reserving the right to appeal a legally dispositive issue." The supreme court addressed the appealability of issues following a plea of guilty or no contest in light of section 924.051(4) in *Amends. to the Fla. Rules of App. Proc.*, 696 So. 2d 1103, 1105 (Fla. 1996). There, the supreme court recognized an

anomaly in section 924.051(4): not only did the statute state that a defendant cannot appeal a *judgment* without expressly reserving the right to appeal a legally dispositive issue, but the defendant also could not appeal a *sentence* without expressly reserving the right to appeal a legally dispositive issue.

Because a sentence follows a guilty plea, the supreme court noted that a defendant could not reserve an issue with the sentence at the plea. *See Amends.*, 696 So. 2d at 1105 ("[A] defendant has not yet been sentenced at the time of the plea. Obviously, one cannot expressly reserve a sentencing error which has not yet occurred. By any standard, this is not a reasonable condition to the right to appeal."). The *Robinson* court recognized this point, holding that "a valid guilty plea conclusively disposes of all *prior* issues presented in the cause." *Robinson*, 373 So. 2d at 902 (emphasis supplied).

To correct this anomaly, the supreme court construed section 924.051(4) as permitting appeal of "that limited class of issues described in *Robinson*." *Amends.*, 696 So. 2d at 1105. In particular, "a defendant who pleads guilty or nolo contendere without reserving a legally dispositive issue [may] nevertheless appeal a sentencing error, provid[ed] it has been timely preserved by a motion to correct the sentence [under Rule 3.800(b)]." *Id.* Indeed, the supreme court amended rule 9.140(b)(2)(A) to permit all of the post-plea grounds for appeal indicated in *Robinson*, without the requirement that the defendant reserve the issue for appeal. *See* Fla. R. App. P. 9.140(b)(2)(A)(ii).

## C. *State v. Dortch*

In *State v. Dortch*, the supreme court addressed Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii)c., which permits appeals regarding involuntary pleas, but only "if preserved by a motion to withdraw the plea." There, the respondent argued that the trial court committed fundamental error by failing to observe the procedural rules regarding findings of competency, and that because the error was fundamental, he was not required to preserve his claim with a motion to withdraw the plea. The supreme court disagreed, noting that "a defendant has no constitutional due process right to the correction of unpreserved error." *Dortch*, 317 So. 3d at 1081. In particular, the supreme court

7

noted that its decision in *Robinson* "determined that the state constitutional right to appeal does not include the right to appeal an involuntary plea without first filing a motion to withdraw plea." *Dortch*, 317 So. 3d at 1077.

When the supreme court "codified *Robinson* in Rule 9.140(b)(2)(A)(ii)(c), [it] took care to facilitate defendants' compliance with the rule's preservation requirement [by adopting] Rule of Criminal Procedure 3.170(*l*) to give defendants 30 days after rendition of sentence to file a motion to withdraw plea[, which is] concurrent with the deadline for filing a notice of appeal." *Dortch*, 317 So. 3d at 1082–83. As such, "[a] defendant who does not comply with the rule's preservation requirement must seek any available relief through collateral review. *Id.* at 1075; *see also* Fla. R. Crim. P. 3.850(a)(5) (permitting a defendant who had pleaded guilty to argue on postconviction that "the plea was involuntary"). As a result, the supreme court concluded that "there is no justification for a fundamental-error exception to rule 9.140(b)(2)(A)(ii)(c)." *Dortch*, 317 So. 3d at 1083.

III

If Emerson were claiming that the court's failure to comply with the procedural rules regarding findings of competency rendered his guilty plea involuntary, we would reject this claim under the authority of *Dortch*. But Emerson disclaims that argument. Noting that he did not raise the matter regarding his competency until *after* he entered his guilty plea, he claims not that his plea was involuntary, but that the trial court's failure to comply with the procedural rules regarding findings of competency rendered his *sentence* erroneous. In other words, Emerson claims he is entitled to appeal under rule 9.140(b)(2)(A)(ii)***d***., as opposed to rule 9.140(b)(2)(A)(ii)***c***. Since subdivision d., like subdivision c., requires the defendant to "preserve" the claim before it can be raised on appeal following a guilty plea, a question arises: does *Dortch* applies with equal force to a subdivision d. claim? If so, a defendant who pleads guilty may not appeal an error in sentencing without preserving it by claiming the error was fundamental. *Jackson*—by creating a distinction between errors in the sentencing order and errors in the sentencing process—as well as

8

general rules regarding appeal following guilty plea, complicates this question.

The law set out above makes clear that a guilty plea waives appeal of (unreserved) issues occurring before the plea but does not waive appeal of matters occurring after the plea. Moreover, with respect to involuntary pleas and sentencing errors, defendants must preserve those post-plea issues by appropriate motion: rule 3.170(*l*) motion for involuntary pleas, and objection at sentencing or rule 3.800(b) motion for sentencing errors.[4] But what about errors in the sentencing process?

*Jackson* teaches that such errors are not "sentencing errors" for which a defendant can file a rule 3.800(b) motion, and as such must be preserved by objection at sentencing. Yet, a sentencing-process error is generally a post-plea issue that was not waived by the guilty plea. *Cf. Amends.*, 696 So. 2d at 1105 ("[O]ne cannot expressly reserve a sentencing error which has not yet occurred.").

This leaves appeal of sentencing process errors following a guilty plea in limbo. Rule 9.140(b)(2)(A) tells us that a defendant pleading guilty *may not appeal* unless authorized by that subdivision. Because a sentencing process error is not a "sentencing error," nor does it appear to be covered by any other subdivision of rule 9.140(b)(2)(A), it is unclear whether appeal of sentencing process errors is even authorized.[5] But given the

---

[4] A defendant can also object to an involuntary plea by moving to withdraw the plea before sentencing under rule 3.170(f). We discuss only rule 3.170(*l*).

[5] We reject the suggestion, alluded to above, that the phrase "sentencing error" has a broader definition in rule 9.140(b)(2)(A)(ii)d. than it does in rule 3.800(b), so that it encompasses sentencing process errors. *Dortch* notes that a different subdivision of rule 9.140 prohibits review of "sentencing errors" unless preserved in the same manner outlined in *Jackson*: objection at sentencing or filing a rule 3.800(b) motion. *See Dortch*, 317 So. 3d at 1081–82; Fla. R. App. P. 9.140(e). We take that to mean that "sentencing error" has the same meaning in rule 3.800 and rule 9.140.

guidance of *Robinson*, cited with approval in *Dortch*, it is difficult to conclude that it is not.

Even if an appeal of a sentencing process error following a guilty plea is authorized, there is no post-plea motion that a defendant could file to present a sentencing process error, like a defendant could for an involuntary plea (Rule 3.170(*l*) motion) or an error in the sentencing order (Rule 3.800(b) motion). This fact places review of a sentencing process error in a different posture than review of an involuntary plea. According to *Dortch*, the availability of a post-plea motion renders it unnecessary to recognize a fundamental error exception regarding an involuntary plea on appeal. Likewise, the availability of a post-plea motion renders it unnecessary to recognize a fundamental error exception regarding an error in the sentencing order. *See Brannon*, 850 So. 2d at 456. But again, no such motion exists for sentencing process errors. Denying review of an unpreserved fundamental sentencing process error seems inconsistent with *Robinson* and is not required by *Dortch*.

*Dortch* implies that a defendant cannot appeal following a guilty plea unless he complies with the preservation requirements in rule 9.140(b)(2)(A)(ii). Permitting a defendant who pleaded guilty to raise a fundamental sentencing process error may be seen as inconsistent with *Dortch*.[6,7] To that end, we certify a question of great public importance as indicated above.

---

[6] We note that some courts have continued to decide whether fundamental error occurred in the sentencing process following a guilty plea without considering whether rule 9.140(b)(2)(A) forecloses such review in light of *Dortch*. *See, e.g.*, *Geske v. State*, 378 So. 3d 1199 (Fla. 2d DCA 2024) (addressing whether the sentencing court committed fundamental error in considering an uncharged crime at sentencing without mentioning either *Dortch* or rule 9.140(b)(2)(A)); *Nelson v. State*, 392 So. 3d 174 (Fla. 5th DCA 2024) (same). Because these opinions cite neither *Dortch* nor rule 9.140(b)(2)(A), we choose not to certify conflict.

[7] Our application of *Jackson* not only excludes appellate consideration of fundamental error in the sentencing process, but

## IV

*Dortch* could be interpreted to suggest that Article V, section 4(b)(1) of the Florida Constitution does not provide a constitutional right to raise a claim of fundamental error on appeal. In that case, the Court stated that "a defendant has no constitutional due process right to the correction of unpreserved error." *Dortch*, 242 So. 3d at 1081. Additionally, the Court suggested that, by failing to preserve a claim of error in the trial court, a defendant forfeits the right to raise that claim in an appellate court. *See Dortch*, 317 So. 3d at 1081 ("'No procedural principle is more familiar,' the Supreme Court has observed, 'than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" (quoting *United States v. Olano*, 507 U.S. 725, 731 (1993)). Furthermore, the Court noted that "[c]ourts developed the fundamental error doctrine as a matter of grace, not because of any entitlement on the part of criminal defendants." *Dortch*, 317 So. 3d at 1081. Finally, the Court characterized fundamental error as an exercise of judicial discretion. *See Dortch*, 317 So. 3d at 1081 ("We have said that an 'appellate court should exercise its *discretion* under the doctrine of fundamental error very guardedly.'" (quoting *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970))). Taken together, these statements could suggest that the right to appeal under Article V, section 4(b)(1) of the Florida Constitution does not include the right to raise a claim of fundamental error.

Furthermore, if a defendant is prohibited from raising an unpreserved claim of fundamental error following a guilty plea on

---

may also exclude appellate consideration of *preserved* sentencing process error. That is, if a sentencing process error is not a sentencing error under rule 9.140(b)(2)(A)(ii)d., and no appeal can be taken following a guilty or nolo contendere plea unless it is authorized by rule 9.140(b)(2)(A), then no authority exists to permit appeal of any sentencing process error. While this implication raises other important concerns, we do address them here because Emerson did not preserve the issue and claims fundamental error instead.

11

direct appeal, we presume it can be raised by motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. The Supreme Court has stated that "[t]he purpose of the Rule 3.850 motion is to provide a means of inquiry into the alleged constitutional infirmity of a judgment or sentence" and that "any matters which could have been presented on appeal are . . . held to be foreclosed from consideration by motion under [Rule 3.850]." *McCrae v. State*, 437 So. 2d 1388, 1390 (Fla. 1983) (citations omitted). Accordingly, the fact that defendants may not raise this constitutional claim on direct appeal means that they should be permitted to bring it by postconviction motion, so they are not denied a judicial remedy.

In making these observations, we do not announce support for a policy that errors in the sentencing process following guilty plea may not be raised by direct appeal. However, we find that rule 9.140(b)(2)(A)(ii), *Jackson*, and *Dortch* requires the conclusion we draw. But in so ruling, we note that in this case, as noted below, Emerson never established fundamental error.

V

Even if we could review for an unpreserved fundamental sentencing process error, we would find that the error claimed here was not fundamental. Emerson's claim of fundamental error puts form over substance. Instead of showing how the trial court's failure to hold a competency hearing or to issue a written order resulted in actual prejudice, Emerson simply points to the lack of a hearing and an order as proof that fundamental error occurred. The law, however, requires more. The supreme court has held that a claim of fundamental error in this context "must amount to a denial of due process, and consequently, should [only] be found to apply where prejudice follows." *Santiago-Gonzalez v. State*, 301 So. 3d 157, 175 (Fla. 2020).

Emerson's counsel filed an "Unopposed Motion for Appointment of Psychiatric Expert." The trial court then appointed an expert for a competency evaluation. The psychologist appointed by the court evaluated Emerson and filed a report recommending that the court consider Emerson competent to proceed. The psychologist noted the following about Emerson:

1.  Appreciates the charges or allegations against him: Acceptable.

2.  Appreciates the range and nature of possible penalties: Acceptable.

3.  Understanding of the adversarial nature of the legal process: Acceptable.

4.  Capacity to disclose to attorney pertinent facts surrounding the alleged offense: Acceptable.

5.  Ability to relate to attorney: Acceptable.

6.  Ability to assist attorney in planning defense: Acceptable.

7.  Ability to realistically challenge prosecution witness: Acceptable.

8.  Ability to manifest appropriate courtroom behavior: Acceptable.

9.  Ability to testify relevantly: Acceptable.

10. Motivation to help self in legal process: Acceptable.

11. Capacity to cope with the stress of incarceration prior to trial: Acceptable.

Finally, the court-appointed psychologist opined that Emerson "does not meet criteria for involuntary hospitalization."

Less than two months after receiving the competency report, the trial court sentenced Emerson. During that hearing, Emerson never raised the issue of his competency. He did, however, correct a factual error made by his counsel. After that, Emerson testified about his role in the offense, set out in detail here:

Good afternoon, Your Honor. Thank you for allowing me this moment. I want to begin by apologizing. I have a lot to be sorry for in this ordeal. First, to the victim, Tyler,

13

I am so sorry for what you had to go through after we met up that night. If I could relive that day, we would have never met up. This small decision could have been avoided a storm of bad outcomes. I apologize to your family also. I am sorry that they have to sit through this with you offering their support for a situation that could have been avoided. I am so sorry Mr. and Mrs. Rowell. I am sorry that you went through this and I am sorry that I hurt your son. I am sorry.

Your Honor, I would like to apologize to the Court. It seems like I have wasted the Court's time with my previous commitment. I can assure you that I am awake now. My intentions were to stay out of trouble upon my release from prison. I see now that even a small decision such as meeting up to do a fast transaction can result in people's lives being permanently changed.

This event has affected me too. Not only did I hurt Tyler, but I hurt myself. I also let the Court down. I hope you, Your Honor, can be more forgiving than I am on myself. I will never forget this mistake. I take full responsibility for my actions and every terrible decision I made that day. This was a bad day for me and Tyler.

\* \* \* \*

We both made a series of bad choices that day. I should not have been selling drugs, and when Tyler contacted me on Snapchat, I would have no other reason to meet up with him. All of this could have been avoided. He said on Snapchat that he wanted to buy two pounds of marijuana from me. I was at work at Flounder's, so we set up a time for when I got off for me to call him. This was supposed to be a peaceful transaction. I didn't go there looking to harm anyone. I didn't bring a weapon and had no reason to think that I needed one. Tyler got into my car and I passed him a book bag that contained two pounds of marijuana. He said, so you want 3,200 for this, right? He then reaches to retrieve the money and instead raises a pistol. He struck me in the head with the pistol. We began to wrestle over the gun and I had an oyster

14

shucker in the cup holder as I had just got off -- as I had just left work at Flounder's. I thought quickly -- I thought quickly of this and grabbed it and struck him until he leaned off me. At this point, I am so spooked that I am not thinking of anything but getting away from him. I didn't know the extent of any injury, I just wanted to survive and get back to safety. I did leave the scene of the incident and that was irresponsible. I should have thought of Tyler's wellbeing more than myself. I should have stepped up and called for help.

The whole thing was a bad idea, but my intentions were never to hurt anyone. I definitely never intended to kill anyone that night. All of this resulted from me wanting to get ahead in life quicker. I had only been out of prison for 19 days at that point.

Financially, things were moving slowly since I was released from a prison that offered no vocations. I had just fell into the only routine that I knew to make fast money. I wanted a jump start and shucking oysters at Flounder's was not paying out yet. I had only been employed for one week.

There are no excuses for my actions. I had I do spend time reflecting on why I did something so horrible and how I can do things differently in the future. I regret every decision that I made that day after leaving work. I do want to be a better person. I want to contribute to my community and I don't want to be a statistic. I don't want jail and prison to be the only things that I know. I know I am going to prison and it is fitting for the crime. I need to take advantage of rehabilitation programs that are available at some camps, as well as learning vocation. I need the opportunity to learn a skill in order to have a better chance. I hope that I will be placed at a prison that offers better programs. I can do better than this, I just need some tools. Right now, I have nothing.

Please have mercy on me, Your Honor. I want all of the things that we all want. I will spend every day in prison building my future and asking for forgiveness for

my past. I pray that everybody in this courtroom accepts my apology, and I am truly sorry. I am sorry, Tyler. I'm sorry. I am sorry, Your Honor.

Even though the trial court in this case did not make an oral competency finding, the psychologist's report and Emerson's own testimony belie any claim that he was incompetent during the sentencing hearing. Because *Santiago-Gonzalez* requires a showing of actual prejudice, the lack of a competency hearing and the lack of a written competency order by themselves are insufficient to demonstrate fundamental error.[8] Accordingly, we affirm.

AFFIRMED; QUESTION CERTIFIED.

M.K. THOMAS, J., concurs; TANENBAUM, J., concurs in part and in result but dissents as to certification with opinion.

------------------------

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

------------------------

TANENBAUM, J., concurring in part and in result but dissenting as to certification.

Emerson, all at once, pleaded no contest to a criminal charge in one new case and admitted to violating his probation in four other cases. He was adjudicated guilty of the new law violation and

------------------------

[8] This conclusion is consistent with *Awolowo v. State*, 389 So. 3d 788, 793 (Fla. 1st DCA 2024), *review granted* 2024 WL 5241703 (Fla. Dec. 27, 2024), where we ruled that "[f]undamental error will only arise from a trial court's failure to make a determination of the defendant's competency when the record shows there were reasonable grounds to believe that the defendant was incompetent to proceed."

saw his probation revoked. At a subsequent, consolidated sentencing hearing, the trial court took testimony and then imposed a sentence on Emerson for every one of the five criminal cases it had before it, each sentence later reflected in a distinct written order. Emerson appeals those five orders, and we now have them consolidated before us.

I agree with the majority that we should affirm, and I join its analysis regarding why, if we were to reach the issue, there could be no fundamental error—though, technically, the analysis is dicta. As for the majority's analysis regarding Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii), I pointedly disagree with how it views the nature of that procedural rule and its suggestion that, under the rule, a defendant like Emerson—who pleads guilty or no contest—can *never* "challeng[e] an error in the sentencing process—even if that error was preserved." Contrary to the premise underlying the majority's analysis in this respect, procedural rules are *not*—cannot be—substantive law. The court itself acknowledges that it cannot hinder constitutional or statutory rights by rule; its rules cannot obviate or narrow that which the constitution or a statute guarantees.

So, as will be explained, under rule 9.140(b)(2)(A)(ii)e. (allowing an appeal "as otherwise provided by law"), Emerson necessarily *could* have sought review of this issue even though he pleaded no contest—his ability to appeal any *preserved* right-infringement associated with his sentence being assured by the Florida Constitution. Because he did not preserve it with a contemporaneous objection at the sentencing hearing, Emerson forfeited that entitlement, and by statute and rule, we are precluded from considering it. My dissent is limited to the certified question, which, based on my reading of rule 9.140(b)(2)(A)(ii), is not necessary to our decision; and which, at all events, the supreme court already has clearly answered.

I

Notably, Emerson's briefing does not attack the new judgment of conviction or the revocations of probation. Nor does he identify any error in any of the resultant sentencing orders themselves. Rather, Emerson cabins his challenge to the process that produced

those orders, *after* he pleaded no contest to the new charge (along with the admissions to violating probation). According to Emerson, the trial court erred by going forward with the sentencing hearing (at the conclusion of which it pronounced sentence) while there was, as he sees it, an open question about his competency. He contends the question needed to have been resolved beforehand.

Emerson frames the open question as whether he was competent to stand for sentencing merely because the trial court appointed an expert to evaluate him. The court did in fact appoint such an expert; it just happened to use the wrong order, a procedural hiccup upon which Emerson attempts to capitalize. The order cited Florida Rule of Criminal Procedure 3.210(b)(1), but its text comported with neither what Emerson expressly sought by motion nor what rule 3.210(b)(1) requires. Emerson's counsel had sought the appointment of an expert, citing a different rule, Florida Rule of Criminal Procedure 3.216—a rule authorizing an appointment "to assist counsel in the preparation of the defense" for an indigent client when *counsel* has some "reason to believe that the defendant *may* be incompetent to proceed." Fla. R. Crim. P. 3.216(a) (emphasis supplied). Unlike rule 3.210, rule 3.216 provides that the "expert shall report only to the attorney for the defendant," matters contained therein "fall[ing] under the lawyer-client privilege." *Id.* This rule works in conjunction with section 916.115, Florida Statutes, which allows a private attorney appointed to represent an indigent defendant—like Emerson's counsel was—to have access to expert services at public expense.

That clearly is what counsel was trying to do as he prepared for sentencing. The motion tracked rule 3.216's language, using the contingency phrase "may be incompetent to proceed." It did not use the more certain and imperative phrasing found in rule 3.210: that counsel had a "reasonable ground" that Emerson "*is* not mentally competent." Fla. R. Crim P. 3.210(b) (emphasis supplied). The motion also did not set out any facts to demonstrate this reasonable ground, and it mentioned that the Justice Administration Commission will not be responding to the motion because the expert, if appointed by court order, would be paid by the court—another reference to section 916.115's indigency cost-payment provisions. The trial court's order nevertheless cited both rule 3.210 *and* section 916.115, but it did not find there to be a

"reasonable ground to believe" that Emerson was not competent to proceed to sentencing. Simply put, neither Emerson's motion nor the court's order rested on a reasonable belief that Emerson affirmatively *was* incompetent; and even on appeal, Emerson fails to point to anything in the record suggesting incompetency.

To be sure, the U.S. Supreme Court has read the Fourteenth Amendment's due-process guarantee to require state trial courts "to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial." *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (characterizing holding in *Pate v. Robinson*, 383 U.S. 375 (1966)). Rule 3.210 establishes this procedure. *See State v. Dortch*, 317 So. 3d 1074, 1080 (Fla. 2021) ("We have long recognized that rule 3.210 establishes the procedures through which Florida complies with the mandate of *Drope* and *Pate* and protects a defendant's right not to be proceeded against while incompetent."). Before this procedure can be triggered, though, there must be information available to the trial court that "create[s] a sufficient doubt of [the defendant's] competence to stand trial to require further inquiry on the question." *Drope*, 420 U.S. at 180. Only if there is a "predicate [] established"—that there is a "reasonable ground" for believing the defendant is incompetent—must there be a competency hearing under rule 3.210 at all. *Dortch*, 317 So. 3d at 1080; *see also id.* (characterizing "'reasonable ground' test [as] an objective one that looks at the information available to the trial court at the relevant time in the proceedings").

While the trial court appears to have mistakenly referenced rule 3.210 in its order, there is no substantive indication that anyone attempted to initiate the process required by *Pate* and *Drope* and reflected in rule 3.210. If that process was not triggered, Emerson cannot now be heard to argue error based on a failure to follow the uninvoked process. *Cf. Dortch*, 317 So. 3d at 1080 (framing the question of "a *constitutional* entitlement to a subsequent competency hearing" in terms of meeting the threshold for "*invoking* the rule 3.210 competency procedures in the first place" (second emphasis supplied)). This clear lack of cognizable harm is an easy enough ground for a summary affirmance. We need not go further.

But the majority wrestles with a weighty threshold question that does deserve some attention from the supreme court.[1] As mentioned above, Emerson's appeal seeks to enforce his right to due process at the sentencing hearing, which is to say he argues for activation of procedural safeguards to ensure that he was not "proceeded against while incompetent." *Dortch*, 317 So. 3d at 1079–80; *cf. Scull v. State*, 569 So. 2d 1251, 1252 (Fla. 1990) (describing "due process" in sentencing context as embodying "a fundamental conception of fairness that derives ultimately from the natural rights of all individuals" and ordering a new sentencing to cure due-process violation). There is no doubt that these consolidated appeals address only, as the majority points out, an "error in the sentencing process," and not "errors in [any] order[] entered *as a result of* the sentencing process," which means the error contested by Emerson is not a "sentencing error," at least "under rule 3.800(b)." *Jackson v. State*, 983 So. 2d 562, 566, 578 (Fla. 2008) (emphasis supplied). Rule 9.140(b)(2)(A)(ii)d. uses the same term—the rule expressly identifying the only type of error tied to sentencing that can be raised by a "defendant who pleads guilty or nolo contendere": "a sentencing error, if preserved." I agree with the majority that the term has the same meaning that the supreme court gave it in *Jackson*.

The majority and I, however, view the impact of *Jackson* on Emerson's right to appeal differently. As the majority acknowledges, its reading, if correct, would leave rule 9.140 with a failure to account *expressly* for a defendant's appellate claim that there was a constitutional or statutory deficiency in the process that led to the sentence—what some might call a "*Jackson* Hole."

---

[1] The attention I have in mind is a simple rule change to make clear that the court intended rule 9.140(b)(2)(A)(ii) only to eliminate—as a matter of judicial policy—any consideration of fundamental error in the context of appeals by pleading defendants. That is, there is room for change to highlight how only *preserved* errors following a plea—regardless of type—can be raised, but that the rule's scope otherwise matches that of the constitutionally guaranteed right to appeal a sentence.

Our disagreement seems to be over the nature of rules of procedure, particularly rule 9.140(b)(2)(A)(ii). The majority sees the rule as prescriptive (*i.e.*, *defining*, as a matter of policy, the only issues that can be raised in a constitutionally mandated appeal). Under the majority's prescriptive approach, because Emerson pleaded no contest and raises only an error in the sentencing *process*—which is not (under the *Jackson* interpretation of "sentencing error") *expressly* provided for in rule 9.140(b)(2)(A)(ii)—there is no "authorization" to consider his claim on appeal, over which we otherwise have constitutional jurisdiction.

Unlike the majority, I see the rule as merely descriptive (*i.e.*, *reflecting* and *implementing*, procedurally, what the constitution and statutes require), which is all it could be, given the supreme court's authority to prescribe only rules of "practice and procedure" and not substantive policy. Art. V, § 2, Fla. Const.[2] We simply do not look to procedural rules for "authorization" to hear certain appeals over which the constitution already gives us jurisdiction. Or, to put it another way, the supreme court cannot by rule foreclose an appellant from asserting a category of *un-waived* or *un-forfeited* appellate claims in a constitutionally guaranteed appeal, and that could not have been the court's intent when it promulgated the rule. Instead, the rule must reflect what the law demands, so I ascribe significance to the rule's catch-all provision, which—for a defendant who pleads guilty or no contest—recognizes an appeal "as otherwise provided by law." Fla. R. App. P. 9.140(b)(2)(A)(ii)e. This provision is broad enough to accommodate Emerson's retained constitutional right to appeal both errors in sentencing orders and errors in the sentencing process, *provided* the error is properly preserved, as the context dictates.

---

[2] An exception to this is the supreme court's authority to control by rule our jurisdiction to hear appeals from interlocutory orders. *See* Art. V, § 4(b)(1), Fla. Const.

21

## A

My assessment here begins with understanding the difference between a judgment and a sentence in a criminal proceeding. Any original criminal proceeding will produce two categories of appealable final orders. Into the first category goes the typical judgment of conviction, but also an order withholding adjudication.[3] This first category has the following unifying characteristic: each of this type of order authorizes the trial court to impose a penalty or punishment (including probation and community control), which will be reflected in the *second* category of appealable final orders: typically, the sentencing order; but also the probation order, the restitution order, and a similar, authorized, conclusive post-disposition order. The point here is that the process producing the first category of orders does not really matter with regard to the process producing the second. In other words, the process producing the second category of orders is relatively unaffected by whether a defendant is adjudicated guilty following a trial or plea, or whether the defendant gets an order withholding adjudication (or even an order that revokes his probation). In every instance, the proceeding that produces the second category of orders must comport with due process minimums and with any statutes governing that proceeding. There are roughly two independent phases in a criminal proceeding; rendition of the first category of orders sets the line of demarcation between the two.

Bearing this in mind, one easily can understand the supreme court's approach to two enactments precluding direct appeals following pleas. In 1977 the Legislature enacted one such statutory preclusion. The Legislature could not have been clearer at the time: "A defendant who pleads guilty or nolo contendere with no express reservation of the right to appeal *shall have no right to a direct appeal*." § 924.06(3), Fla. Stat. (1977) (emphasis supplied). Yet, the supreme court treated the statute as implicating only "the right of appeal which exists from a guilty plea." *Robinson v. State*, 373 So. 2d 898, 901 (Fla. 1979). Indeed, the whole focus in the

---

[3] In an ancillary criminal proceeding dealing with a violation of probation, a revocation order would fall into this category.

opinion was the guilty plea; nothing coming after it that might be appealable was addressed. *See id.* at 902 ("Furthermore, we find that an *appeal from a guilty plea* should never be a substitute for a motion to withdraw a plea." (emphasis supplied)); *id.* at 902–03 (concluding that "a defendant's right to *appeal from a guilty plea* is limited to a class of issues which occur contemporaneously with the entry of the plea," the plea "cut[ting] off any right to an appeal from court rulings that *preceded* the plea in the criminal process" (emphases supplied)).[4]

The court characterized the statute as nothing more than "a codification" of all this: "that a valid guilty plea conclusively disposes of all *prior* issues presented in the cause." *Id.* at 902 (emphasis supplied). In other words, the statute simply "forecloses appeal from matters which took place *before* defendant agreed to a judgment of conviction." *Id.* (emphasis supplied); *see also id.* at 900 (holding "that its prohibitions against an appeal from a guilty plea are directed [only] to pretrial rulings"). The court essentially acknowledged what was noted above—that the plea is the demarcation between the two main phases of a criminal proceeding. For the court, approval for statutorily limiting the right to appeal the first category of orders was a simple function of waiver. What the supreme court would not tolerate was a

---

[4] This would have made sense at the time. There does not appear to have been a sentencing hearing that followed the plea colloquy. *See id.* at 900 ("Upon conclusion [of the colloquy], the trial court accepted the plea but delayed sentencing pending receipt of a presentence investigation report requested by defense counsel. After the report was filed, the trial court sentenced appellant to [the maximum] five years imprisonment."). The defendant in *Robinson* made assignments of error but did not contend on appeal that there was an issue with his plea, that the trial court lacked jurisdiction, or that his sentence was illegal. *See id.* at 901; *see also id.* at 903 (providing more detail about the defendant's assignments of error). And the only matter on review before the supreme court was whether the district court of appeal properly "dismiss[ed] defendant's appeal *from a guilty plea* as frivolous and contrary to the provisions of section 924.06(3), Florida Statutes (1977)." *Id.* at 900 (emphasis supplied).

23

*prospective* waiver of the right to appeal issues that had not yet arisen. So the fact of a plea could have no effect on the right to appeal any matter happening contemporaneously with the plea or, presumably, happening *after* the plea—including sentencing, which would produce the second category of orders. *Cf. id.* at 902 ("Neither the statute nor our present rules cut off a right of appeal from conduct that would invalidate the plea itself."); *In re Amends. to the Fla. Rules of App. Proc.*, 696 So. 2d 1103, 1105 (Fla. 1996) (recognizing that the statute, as construed in *Robinson*, could only "foreclose[] appeals from matters which took place before the defendant agreed to the judgment of conviction").

Acting within these principles, the court rendered the statute constitutional by reading into it an allowance for "an exclusive and limited class of issues which occur contemporaneously with the entry of the plea that may be the proper subject of an appeal." *Robinson*, 373 So. 2d at 902. Those issues "would include only the following: (1) the subject matter jurisdiction, (2) *the illegality of the sentence*, (3) the failure of the government to abide by the plea agreement, and (4) the voluntary and intelligent character of the plea." *Id.* (emphasis supplied). The court would later observe how the highlighted text carried a connotation broad enough "to cover various types of errors in the sentence imposed." *Leonard v. State*, 760 So. 2d 114, 117 n.7 (Fla. 2000); *see also Maddox v. State*, 760 So. 2d 89, 97 & n.6 (Fla. 2000) (observing how the *Robinson* court meant at the time for "illegality" to have "a broader meaning," to include various types of "unpreserved sentencing errors"; and citing cases in which, notably, the court had corrected sentencing process errors).

In 1996 the Legislature enacted a similar preclusion as part of section 924.051, Florida Statutes. *See* ch. 96-248, § 4, at 954, Laws of Fla. Under that statute, "[i]f a defendant pleads nolo contendere without expressly reserving the right to appeal a legally dispositive issue, or if a defendant pleads guilty without expressly reserving the right to appeal a legally dispositive issue, the defendant may not appeal the judgment *or sentence*." § 924.051(4), Fla. Stat. (emphasis supplied). Albeit through an administrative opinion adopting rule amendments to implement the statutory change, the supreme court receded in part from its holding in *State v. Creighton*, 469 So. 2d 735 (Fla. 1985) and read

24

Article III, section 4(b) of the Florida Constitution to guarantee an individual's right to appeal a trial court's final order. *See In re Amends.*, 696 So. 2d at 1104.[5]

The court from there acknowledged that the Legislature is free to "implement this constitutional right" by "plac[ing] reasonable conditions upon it," including conditioning "the right to appeal upon the preservation of a prejudicial error or the assertion of a fundamental error." *Id.* at 1104–05; *cf. State v. DiGuilio*, 491 So. 2d 1129, 1134 (Fla. 1986) (stating that the Legislature had the "unquestioned" authority to enact a statute requiring an appellate court to find preserved, harmful errors before it reverses a judgment). At the same time, the court cautioned against a statute "thwart[ing] the litigants' legitimate appellate rights." *In re Amends.*, 696 So. 2d at 1104. And it "is not a reasonable condition to the right to appeal" to require a defendant who "has not yet been sentenced at the time of the plea" to reserve prospectively an error regarding his sentence that "has not yet occurred." *Id.* at 1105. In other words, the Legislature can require a defendant to *preserve* a sentencing error contemporaneously before he can have that claim of error considered on appeal, but it cannot effectively abrogate his right to appeal the sentence by conditioning that right on an impossibility—his reserving a sentencing error before it happens.

This 1996 effort from the supreme court reflected once again its willingness to narrowly construe a statute precluding appeals by those defendants pleading guilty or no contest in order to preserve the constitutional right to appeal that it previously had recognized. As the court later observed, the 1996 Act did "nothing more than codify the existing case law on the subject"; so, "[d]espite the categorical language of the text," the statute's prohibitions were "directed [only] to pretrial rulings[,]" and "a defendant must have the right to appeal that limited class of issues described in

---

[5] While odd that the supreme court would purport to use an administrative rule proceeding to overturn a holding it previously had rendered using its vested judicial power, the court later ratified, in adversarial judicial proceedings, its recognition of this constitutional right to an appeal. *See, e.g., State v. Jefferson*, 758 So. 2d 661, 664 (Fla. 2000); *Leonard*, 760 So. 2d at 116.

*Robinson.*" *Dortch*, 317 So. 3d at 1077 n.1, 1078 (quoting in part *Robinson*, 373 So. 2d at 900 and *In re Amends.*, 696 So. 2d at 1105) (added brackets omitted); *id.* at 1082 (acknowledging that the court had "committed" itself "to the position that the Legislature adopted the 1996 Act against the backdrop of *Robinson*, and indeed that the 1996 Act incorporates *Robinson*," and it "cannot pick and choose which aspects of *Robinson* to follow" in applying the statute); *see also Leonard*, 760 So. 2d at 118 (following canon requiring construction of statutes "in a manner that upholds their constitutionality" by reading section 924.051(4) "as codifying the existing limitations on what issues may be addressed on appeal following the entry of a guilty plea or plea of nolo contendere").

At bottom, incorporated into the statute is the supreme court's consistent recognition that even a defendant who pleads guilty or no contest has a constitutional right to appeal matters arising after the plea—if preserved as required—and cannot be categorically foreclosed by law from challenging those subsequent errors by virtue of his plea.[6] That includes, according to *Robinson* and as recognized by the court in *Leonard* and *Maddox* (and noted above), errors that might make his sentence illegal in the broader sense— that is, any *preserved* error undercutting the sentence, regardless of whether it stemmed from the process that led to its imposition or from the sentence ultimately imposed and reflected in the order on appeal. This, frankly, is what the substantive law demands.

---

[6] Rule 9.140(b)(2)(A)(ii) is notably consistent with the court's construction of the statute. Aside from "subject matter jurisdiction" (which is never waivable), the matters listed in rule 9.140(b)(2)(A)(ii) closely track what *Robinson* listed as conduct occurring either contemporaneously with the plea (*viz.* "the voluntary and intelligent character of the plea") or *after* the plea (*viz.* "failure of the government to abide by the plea agreement" and "illegality of the sentence"). *Robinson*, 373 So. 2d at 902; *see also In re Amends.*, 696 So. 2d at 1105 (describing *Robinson* as holding "that the statute properly foreclosed appeals from matters which took place *before* the defendant agreed to the judgment of conviction" (emphasis supplied)).

B

In the commensurate 1996 rule changes (*i.e.* creation of Florida Rule of Criminal Procedure 3.800(b) and modification of rule 9.140), we witness the supreme court's attempt at striking a balance between implementation of the policy that the Legislature *could* constitutionally enact, on the one hand; and protection of the right to appeal detailed above in the previous subpart, on the other. The supreme court having accepted that the Legislature could impose reasonable preservation requirements on errors that could be raised on appeal (and even mandate a fundamental error exception to such requirements), it adopted "interlocking rules of procedure" to effectuate both its construction of the statute and "the legislature's philosophy of attempting to resolve more issues at the trial court level." *Dortch*, 317 So. 3d at 1083 (quoting *In re Amends.*, 696 So. 2d at 1105). The court amended the appellate rules "to codify *Robinson*'s limited list of appealable issues." *Id.* at 1078. While the list was limited, it was not necessarily exhaustive, the court having previously stated it was cataloging the required appealable issues "to our knowledge." *Robinson*, 373 So. 2d at 902; *see also id.* (attempting to identify "conduct" that remained essential to the defendant's "*right* of appeal" (emphasis supplied)).

The supreme court's focus, though, clearly was on implementing the Legislature's preservation requirement and demand for more efficiency. *Cf. Maddox*, 760 So. 2d at 97 ("In adopting these rules, we anticipated that we would further the goal of the Act by giving defendants an appropriate mechanism for correcting and preserving sentencing errors."). It devoted almost all its rulemaking efforts to accommodating the Legislature's stated goal "to ensure that all claims of error are raised and resolved at the first opportunity" and implementing the court's policy "that sentencing errors should be handled by the trial courts at the earliest opportunity rather than on appeal or in the postconviction process." *Id.* at 95 (quoting in part section 924.051(8)). Recognizing both that "many sentencing errors are not immediately apparent at sentencing" and the import of having previously held that the Legislature could not completely foreclose the ability to appeal a sentencing issue before it has arisen, the court adopted a new rule 3.800(b) "to authorize the filing of a motion to correct a defendant's sentence" as "an avenue to preserve

27

sentencing errors and therefore appeal them." *In re Amends.*, 696 So. 2d at 1105; *see also Maddox*, 760 So. 2d at 97 (explaining that rule 3.800(b) was adopted to "further the goal of the Act"). Simply put, the court engaged in rulemaking to *maximize* the defendant's ability to exercise his right to appeal the sentence—within certain procedural parameters—*not* to restrict that ability.

Looking at the rule changes from this perspective, it is telling that instead of the phrase "illegality of the sentence" mentioned in *Robinson*, subdivision d. of rule 9.140(b)(2)(A)(ii) mentions only "sentencing errors." This makes sense because, at the same time, the court was amending rule 3.800 to authorize the trial court to correct those errors and ensure the defendant has at least one opportunity to preserve his claim of error regarding his sentence. It cannot be overemphasized here that the supreme court was, to the extent procedurally permissible, implementing the defendant's *constitutional* right to appeal, for which preservation can operate as a condition precedent for its exercise. To this point, all three types of conduct listed in subdivision (A)(ii) (mentioned in the margin in the preceding subpart) require some form of preservation.

Indeed, as the court explained in adopting rule 3.800, it sought to implement its holding in *Robinson*, while hewing to permissible legislative policy, by enabling a pleading defendant, who reserved no issues for appeal, "to nevertheless appeal a sentencing error, provid[ed] it has been timely preserved by motion to correct the sentence." *In re Amends.*, 696 So. 2d at 1105. It said this in connection with addressing those errors tied to the sentence that could not be preserved at sentencing, the court obviously intending to protect a defendant's right to raise *any* irregularity in sentencing by ensuring the defendant has at least one opportunity to preserve the issue before the trial court.

We can see this imperative reflected in the court's approach in *Maddox*. There, the court had to address whether the district courts could consider, on direct appeal, "unpreserved errors related to sentencing" raised in appeals "fall[ing] into the window period between the effective date of the Act and the effective date of [the court's] recent amendment to rule 3.800." *Maddox*, 760 So. 2d at 94. It noted "the failure of rule 3.800(b) to provide a failsafe method

for [these] defendants to raise and preserve sentencing errors." *Id.* at 97–98. To avoid an unintended foreclosure of certain errors tied to sentencing being raised on appeal—those that could *not* be preserved prior to rendition of the sentencing order—the court chose not "to give literal effect to" its rule requirement that only sentencing errors raised at sentencing or by motion under rule 3.800 be considered on appeal. *Id.* at 98; *see also id.* at 99 (concluding "that the interests of justice will not be advanced if appellate courts decline to correct certain categories of sentencing errors for criminal defendants whose appellate briefs were filed during the window period after the enactment of the Act but before the adoption of our recent procedural changes in *Amendments II*").

In all this procedural history, we see a supreme court consistently focused on interpreting and tweaking rules 3.800 and 9.140 to *avoid* inadvertently precluding by rule the ability of a criminal defendant—even one who pleads guilty or no contest—to seek appellate redress for one kind of sentencing irregularity (read: the "sentencing error") as part of his recognized constitutional right to appeal. An infringement of a defendant's constitutional or statutory rights during the sentencing process can be easily preserved with a contemporaneous objection at the sentencing hearing. No new motion was needed for those errors, so we do not see much discussion of them in the court's rules decisions.

C

The supreme court's focus on "sentencing errors" in rule 3.800 and rule 9.140(b)(2)(A) to implement the 1996 Act also can be explained from a different perspective. This focus derives, not from an intent to prescribe just one type of appealable error regarding sentencing, but from the unique nature of the sentencing order itself. On the one hand, it is a separate final order. *Cf.* Fla. R. App. P. 9.140(b)(3) (requiring the defendant to file a notice of appeal "at any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence"). Once rendered, the "trial court has no authority to modify, amend or vacate" it, "except in the manner and within the time provided by rule or statute." *Kippy Corp. v. Colburn*, 177 So. 2d 193, 199 (Fla. 1965); *see also Mabson v. Christ*, 119 So. 131, 132 (Fla. 1928)

(explaining that an equitable decree "could not be changed, added to, nor taken from," except to correct clerical errors, without resort to some "recognized" authority, because "there must be some point in every court proceeding when the cause is finally disposed of, its thread cut, and the parties out of court"); *Shelby Mut. Ins. Co. of Shelby, Ohio v. Pearson*, 236 So. 2d 1, 3 (Fla. 1970) (explaining that "[u]nless a proper motion or petition is filed within the allotted time, the judgment or order of the trial court becomes absolute"; so in the civil context, "[e]xcept as provided by Rules 1.530 and 1.540, Florida Rules of Civil Procedure, the trial court has no authority to alter, modify or vacate an order or judgment"). Rule 3.800 gives the trial court that required authority.

On the other hand, the sentencing order is not the sentence; it is "usually just a record of the actual sentence required to be pronounced in open court." *Justice v. State*, 674 So. 2d 123, 125 (Fla. 1996); *see Williams v. State*, 957 So. 2d 600, 603 (Fla. 2007) (explaining that "no court has the authority to enter [] a sentence" order that conflicts with its oral pronouncement, "since the oral pronouncement controls and constitutes the legal sentence imposed"); *see also* Fla. R. Crim. P. 3.700(a)–(b) (defining "sentence" to be "the pronouncement by the court of the penalty imposed on a defendant"; and requiring the pronouncement occur "in open court," the pronouncement then being "entered in the minutes"); *cf.* Fla. R. Crim. P. 3.720 (requiring the trial court to "order a sentencing hearing"); Fla. R. Crim. P. 3.721 (requiring the "sentencing court" to "ensure that a record of the entire sentencing proceeding is made and preserved"). This makes the trial court's pronouncement at the sentencing hearing *part of the sentencing process* that results in the written order on appeal. *Cf. Jackson*, 983 So. 2d at 566, 572, 578 (distinguishing between "the sentencing process" and "*orders* entered as a result of" it).

*Jackson*, then, simply mirrors this distinction, noting the difference between a "sentencing error" and an "error in the sentencing process." *See id.* at 578 (distinguishing between "sentencing errors," which are "errors in orders entered as a result of the sentencing process" and the proper subject of a motion under rule 3.800(b), on the one hand; and "an error in the sentencing process" itself, which is not the proper subject of such a motion, on the other, and allowing for consideration of "unpreserved"

sentencing-process errors, "but only under the fundamental error standard"). It should come as no surprise that the court would limit rule 3.800's application to correcting errors in the written sentencing order. As noted, the trial court can modify its final order when authorized by statute or rule. What it cannot do is review the *record* of its own proceeding to assess and correct error appearing there—that being the sole province of the appellate court. *See Gartrell v. State*, 626 So. 2d 1364, 1365–66 (Fla. 1993) (explaining that a "motion to correct the sentence will not serve as a substitute for . . . an appeal to a court of higher jurisdiction"; and noting that the trial court lacked "jurisdiction to correct a sentence that could only be corrected by appeal"); *cf. Jackson*, 983 So. 2d at 568, 573 (agreeing "that rule 3.800(b) was not intended to circumvent rules requiring contemporaneous objections," rules "as relevant in the context of sentencing [appeals] as in any other").

Structurally, there are efficiencies to be gained from authorizing the trial court to make post-sentencing corrections to its final order, the court then being able to quickly remedy an error appearing in that order but being unable to sit in judgment of how it conducted the sentencing hearing that resulted in that order. *See Jackson*, 983 So. 2d at 573; *id.* (limiting "'sentencing error' that can be preserved under rule 3.800(b)(2) . . . [to] an error *in the sentence itself*—not any error that might conceivably occur during a sentencing hearing"—because "[a]llowing defendants to use [the rule] to resurrect unpreserved errors in the sentencing process increases rather than decreases the errors that may be brought on appeal and increases the appellate workload" (emphasis supplied)); *see also Brannon v. State*, 850 So. 2d 452, 458–59 (Fla. 2003) (noting that the court had put "defendants and their attorneys on notice that rule 3.800(b) must be used to preserve both fundamental and nonfundamental sentencing error"; the rule providing "one mechanism whereby *all sentencing errors* may be preserved for appellate review," that is, "to correct *any type of sentencing error, whether we had formerly called that error erroneous, unlawful, or illegal*" appearing "in orders entered as a result of the sentencing process" (quoting *In re Amends. to Fla. Rules of Crim. Proc.*, 761 So. 2d 1015, 1019 (Fla. 1999))).

The court, then, merely was explaining in *Jackson* the functional limitation inherent in rule 3.800(b). Its failure to

31

address more fully what the status of appeals raising sentencing process errors in the plea context indicates to me that it should go without saying—or without saying more—that those process errors fall more generally into the category of "illegality" of the sentence. No one can question that a sentence—the deprivation of liberty and possibly, property—causes harm if it is produced by an unfair proceeding, one that either fails to comport with due-process requirements or infringes on some other right the defendant has in the process. It causes harm just the same as an erroneous sentence contained within the written sentencing order can cause harm. *Cf. Scull*, 569 So. 2d at 1252 (observing that when "the appearance of irregularity so permeates [a sentencing proceeding] as to justify suspicion of unfairness," there has been "a violation of due process" that entitles the defendant to a new sentencing hearing); *Jackson v. State*, 767 So. 2d 1156, 1159 (Fla. 2000) (emphasizing "that all proceedings affecting life, liberty, or property must be conducted according to due process," including sentencing hearings (internal quotation and citation omitted)); *State v. Fleming*, 61 So. 3d 399, 408 (Fla. 2011) (recognizing entitlement to "full panoply of due process rights" at sentencing); *Dunbar v. State*, 89 So. 3d 901, 907 (Fla. 2012) (requiring new sentencing because the defendant's absence at his prior sentencing violated his right to due process and constituted reversible error). Because a defendant like Emerson retains the constitutional right to appeal his sentence as a final order of the trial court, he is, as explained below, entitled to access this court as a forum to seek redress for that harm—provided it was properly preserved as an issue—and a procedural rule cannot categorically preclude that access.

D

Judicial power is the power to remedy injury. Appellate judicial power is the power to remedy harm caused by a lower court. *Gazoombi v. State*, 406 So. 3d 371, 377–78 (Fla. 1st DCA 2025) (en banc) (noting how "a district court's judicial power can be brought to bear only upon a trial court's completed exercise of judicial power" to remedy harm caused by that exercise). The Florida Constitution guarantees access to the appellate courts to obtain that remedy. *See Swift Response, LLC v. Routt*, 401 So. 3d 640, 643 (Fla. 1st DCA 2025) ("The access-to-courts provision in

the Florida Constitution's Declaration of Rights exists to ensure a means to remedy 'an injurious invasion of any right of the individual which is *recognized by or founded upon any applicable principle of law, statutory or common,*' plus 'our organic [ ] law.'" (quoting *Cason v. Baskin*, 20 So. 2d 243, 250 (1944))); *cf. Kilgore v. Bird*, 6 So. 2d 541, 578 (Fla. 1942) (reading a predecessor access-to-courts constitutional guarantee as including appellate courts and remedies); *Psychiatric Assocs. v. Siegel*, 610 So. 2d 419, 424 (Fla. 1992) ("While article I, section 21 may not give a litigant a particular remedy, the right of access does guarantee the litigant a forum in which to be heard.").

The supreme court has held since *Robinson* that a criminal defendant *must* be permitted access to seek appellate review of his sentence, even if he pleaded guilty or no contest, going so far as to practically rewrite the statute to enforce that right, provided he has preserved any error for review. The majority fails to explain why, after all the effort put in across all the cases discussed above to ensure a criminal defendant's right to appeal his sentence, the court would *implicitly*—without any comment—eliminate certain defendants' access to that appellate review for a whole category of claim: relief for un-waived, preserved deprivations of due process at the sentencing hearing. It could not, in any event, and I doubt that is what the court intended to do.

After all, the constitution gives us "jurisdiction to hear criminal appeals," and it gives "criminal defendants" the "constitutional right" to bring such appeals. *Jefferson*, 758 So. 2d at 664. "Once its jurisdiction is invoked properly, the district court . . . has the duty to exercise its judicial power to remedy harm stemming from the infringement of a right or privilege, once successfully demonstrated by the pleader (*i.e.*, by the appellant or petitioner)"—that infringement on appeal being caused "by the *trial court*'s order on review." *Gazoombi*, 406 So. 3d at 378 (citing the constitutional mandate in Article I, section 21 of the Florida Constitution, that the courts "be open to every person for redress of any injury"). To preclude a type of constitutional or statutory harm from being claimed on appeal as a matter of substantive policy—even though preserved—is to circumscribe what is the district court's plenary jurisdiction to review a final order from a trial court. The Legislature cannot "constitutionally limit the

33

appellate courts' subject matter jurisdiction to hear criminal appeals." *Jefferson*, 758 So. 2d at 664. This basic principle most assuredly was what underlay the holding in *Robinson* and in the court's later decisions and opinions.

I in turn am certain the supreme court would agree that it cannot impose similar substantive limitations by procedural rule. *See Williams v. State*, 324 So. 2d 74, 80 (Fla. 1975) (noting its "philosophy that procedural practices should not be permitted to frustrate substantive rights"); *Boyd v. Becker*, 627 So. 2d 481, 484 (Fla. 1993) ("While the Florida Constitution grants this Court exclusive rule-making authority, this power is limited to rules governing procedural matters and does not extend to substantive rights."); *see also Benyard v. Wainwright*, 322 So. 2d 473, 475 (Fla. 1975) (opining that "substantive law" necessarily prevails over the court's rules); *cf.* Fla. R. App. P. 9.040(a) ("In all proceedings a court will have such jurisdiction as may be necessary for a complete determination of the cause."); *In re Proposed Fla. App. Rules*, 351 So. 2d 981, 989 (Fla. 1977) (setting out as commentary to the original subdivision (a) of Florida Rule of Appellate Procedure 9.040 that it was "intended to guarantee that once the jurisdiction of any court is properly invoked, the court may determine the entire case to the extent permitted by substantive law" and did "*not . . . limit the constitutional or statutory jurisdiction of any court*" (emphasis supplied)). I highly doubt that was the court's intent with rule 9.140(b)(2)(A)(ii). Just the opposite, actually.

The court adopted the catch-all in subdivision (b)(2)(A)(ii)e. as part of the 1996 amendments: allowing an appeal "as otherwise provided by law." The court at the time did not explain that provision, instead stating that the "remaining amendments" not discussed were "self explanatory." *In re Amends.*, 696 So. 2d at 1106. Still, the catch-all likely is a nod to the court's hedge comment in *Robinson* (mentioned above) that its catalog of issues "that may be the proper subject of an appeal" was "[t]o our knowledge." *Robinson*, 373 So. 2d at 902. The court fully understood the principle in play—a right to appeal that could not be substantively limited by the Legislature—but understood there may be aspects of that right it might not be capturing fully in the list.

34

The majority attributes significance to the court's recent note in *Dortch* that this provision would not apply if "there is no law that authorizes [a] direct appeal" under the circumstances of the case. *Dortch*, 317 So. 3d at 1083. The court also said it "would not strain to apply this catchall provision to an appeal that is covered by one of the circumstances . . . specifically listed in rule 9.140(b)(2)(A)." *Id.* But neither of these points applies here.

Again, as described at length above, the court *repeatedly* has enforced the *constitutional* right of a criminal defendant who pleads to still appeal, without qualification, his sentence when there has been preservation. The statute incorporates that guarantee. *See id.* at 1082 (explaining "that it was necessary to read *Robinson* into the statute to avoid potential constitutional concerns"). An appeal of a *preserved*, harmful sentencing *process* error, then, *is* provided by law. Indeed, it is *mandated* by the constitution, a mandate the court has read into section 924.06, Florida Statutes, and implemented by rule, as already discussed at length.

While the majority observes there is no provision of rule 9.140(b)(2)(A) expressly providing for a claim of error in the sentencing process, as explained above, the rule can only be descriptive, not prescriptive. It must reflect and implement what the substantive law otherwise requires. In turn, it would be odd to read the court's rule to substantively limit the constitutional guarantee that it itself has repeatedly recognized and enforced as expansively as procedurally possible, from *Robinson* to *Dortch*—at all, let alone by implication. As far as I am concerned, Emerson had a clear right to raise on appeal an error in his sentencing proceeding, even though he pleaded no contest. But he had to preserve the issue to perfect that right and have us consider it on the merits. He did not.

III

Emerson did not ask for a competency hearing prior to being sentenced and did not take any other step to raise the competency issue with the trial court before bringing it here for consideration. This leaves the question of whether we can consider the claim

35

under a fundamental error analysis, a question the majority certifies to the supreme court. I dissent from this certification because the court has already given us an answer.

The supreme court recognizes there *is* a constitutional right to appeal an un-waived, *preserved* error, but there is no such right regarding a forfeited (or unpreserved) error. *See Dortch*, 317 So. 3d at 1081 (noting there is "no constitutional due process right to the correction of unpreserved error"). The court explained, "No procedural principle is more familiar . . . than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 731 (1993)). Fundamental error is a matter of judicial grace, "not because of any entitlement on the part of criminal defendants." *Id.* Courts correct fundamental error, despite a defendant's failure to follow "procedural rules requiring preservation," so as "to protect the interests of justice itself," not the interests of the defendant. *Maddox*, 760 So. 2d at 98.

As a matter of policy, though, the Legislature can condition a criminal defendant's ability to raise an issue on appeal on his preservation of it in the trial court, and that is what it did regarding a defendant who pleads guilty or no contest. It did not make a statutory allowance for fundamental error as an exception to the preservation requirement. The court acknowledged that it "must honor [this] legislative mandate": "that all procedural bars to direct appeal . . . be fully enforced by the courts of this state." *Dortch*, 317 So. 3d at 1082 (quoting in part section 924.051(8)). Only section 924.051(3), which applies to criminal defendants who do not plead guilty or no contest, "specifically recognizes the ability of defendants to raise fundamental sentencing errors on direct appeal"; section 924.051(4) does not provide the same right to those who do plead, but it also "does not preclude" an appellate court "from considering on appeal fundamental sentencing errors." *Maddox*, 760 So. 2d at 96.

The constitution (read: the "law"), then, guarantees Emerson only the right to seek appellate review of any sentencing irregularity—including errors in the sentencing process—when

that irregularity has first been properly raised before the sentencing judge. There is no law source—neither the constitution nor the statute—giving Emerson a right to appeal unpreserved errors in the sentencing process, like the one issue he raises here. I read the rule to reflect what the law requires when it comes to a criminal defendant pleading to the charge against him: access to appellate review of any error that renders the sentencing order itself legally suspect—whether the error is in the process or internal to the order—*provided* the error has been preserved following established procedures for doing so. Had Emerson objected to going forward at sentencing before the trial court addressed his question about competency, we could consider his claim for vacatur of the sentencing order. He did not, so we cannot.

\* \* \*

Because Emerson fails to raise a cognizable claim of harm on appeal from his sentence, we must summarily affirm. *See Gazoombi*, 406 So. 3d at 377 ("The proper disposition here—as with any appeal in which there are only meritless claims for appellate relief—is not dismissal, but affirmance."); *see also id.* at 378 (concluding that "if a district court determines there has been no showing of harmful error committed by the trial court, there is no basis for reversal or vacatur—an affirmance then being the only authorized disposition"); Fla. R. App. P. 9.315(a) (providing for summary affirmance if the initial brief fails to demonstrate "a preliminary basis for reversal").

———————————————

Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Christina Piotrowski, Assistant Attorney General, Tallahassee, for Appellee.